MARSHALL v MARSHALL

Docket No. 68295. Submitted February 8, 1984, at Detroit.—Decided June 28, 1984.

Plaintiff, Neil M. Marshall, and defendant, Helean Marshall, were divorced in the Macomb Circuit Court. The divorce judgment incorporated by reference a property settlement executed by the parties but specifically provided that the settlement was not merged into the judgment but was a contract between the parties. The settlement provided that the major marital asset, certain shares of stock, would go to plaintiff and that defendant would be compensated by cash payments from plaintiff over a period of time. At the time the settlement agreement was entered into, the stock was the subject of a stock purchase agreement at a sum certain less certain adjustments at the time the Interstate Commerce Commission allowed the purchase to be consummated. These adjustments led to a decrease in the value of the stock to plaintiff, who moved within one year of the divorce to modify the judgment, alleging that he did not receive as much as anticipated under the stock purchase agreement. The motion was denied, as was a subsequent motion for rehearing. More than a year after the divorce, plaintiff moved for modification of the judgment, raising the same general reasons but emphasizing the settlement agreement language making plaintiff's obligations conditioned upon "performance" by the stock purchaser. The court, John G. Roskopp, J., granted the motion and reduced the amount due defendant. Defendant appealed and plaintiff cross-appealed. *Held:*

1. A judgment may only be modified on the basis of mutual mistake within one year from the entry. Denial of a motion to modify and for rehearing of the motion to modify does not extend the one-year limitation period. The court had no juris-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 46 Am Jur 2d, Judgments §§ 704, 717.

[2] 66 Am Jur 2d, Reformation of Instruments §§ 13, 14, 94.

[3] 46 Am Jur 2d, Judgments § 682.

[4] 24 Am Jur 2d, Divorce and Separation §§ 840, 843, 846.

[5] 24 Am Jur 2d, Divorce and Separation §§ 841, 843.

diction to modify the judgment because of a mutual mistake after one year from the filing of the divorce judgment.

2. The performance condition in the settlement agreement related to time. The parties knew that the purchase price of the stock was subject to adjustment at the time they entered into the property settlement agreement.

3. The settlement agreement is not subject to alteration by modification of the divorce judgment. It was not merged into the judgment but remained a contract. Plaintiff's remedy, if any, is in contract.

Reversed.

1. JUDGMENTS — RELIEF FROM JUDGMENTS — MUTUAL MISTAKE — LIMITATION OF ACTIONS — COURT RULES.

A judgment may only be modified on the basis of mutual mistake within one year from the entry; denial of a motion to modify and for rehearing of the motion to modify does not extend the one-year limitation period (GCR 1963, 528.3).

2. REFORMATION OF INSTRUMENTS — MISTAKE AS TO EXTRINSIC FACT — CONTRACTS.

Reformation of a contract because of a mistake as to an extrinsic fact will not be allowed even where it is one which probably would have caused the parties to make a different contract, because courts cannot make a new contract for the parties.

3. JUDGMENTS — RELIEF FROM JUDGMENTS — COURT RULES.

Each case must be examined on its facts to determine whether relief from a judgment is necessary, and if such relief is not predicated on any grounds specified by the court rule and the substantial rights of the opposing party will not be detrimentally affected by a grant of relief, extraordinary circumstances must exist which mandate setting aside the judgment in order to achieve justice (GCR 1963, 528.3[6]).

4. JUDGMENTS — RELIEF FROM JUDGMENTS — COURT RULES — CONTRACTS.

A contract for a division of marital property in contemplation of divorce made by two equally positioned parties and incorporated by reference in a divorce decree but specifically not merged with the judgment is outside the reach of the court rule allowing the modification of judgments in order to achieve substantial justice (GCR 1963, 528.3, subds [5], [6]).

5. DIVORCE — REMEDIES — PROPERTY SETTLEMENTS — CONTRACTS.

A property settlement agreement between spouses which is not

merged into the divorce decree may only be enforced by resort to the usual contract remedies.

*Williams, Schaefer, Ruby & Williams* (by *James P. Cunningham*), for plaintiff.

*Kenneth F. Martin,* for defendant.

Before: BEASLEY, P.J., and GRIBBS and J. R. ERNST,\* JJ.

BEASLEY, P.J. Defendant-appellant, Helean Marshall, appeals as of right from an order dated November 15, 1982, modifying the property settlement provisions of her 1980 divorce. Plaintiff-appellee, Neil M. Marshall, cross appeals by leave granted.

The parties were divorced in a judgment dated October 29, 1980. With respect to property settlement, the divorce judgment provided as follows:

"It is further ordered and adjudged that a certain property settlement agreement dated October 29, 1980, is incorporated by reference as if fully recited herein, but is specifically declared not to be merged into this judgment, but is declared to be a contractual agreement between the parties hereto."

Arrived at after protracted negotiations, the nine-page written property settlement agreement was signed by the parties and their respective attorneys on October 29, 1980, in anticipation of and on the same date as the divorce.

The major marital asset of the parties consisted of stock of Ogden & Moffett Company, which was awarded to plaintiff husband under the property settlement agreement. To offset this award, defendant wife was awarded substantial amounts of

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

cash payable by plaintiff husband over a period of time.

Plaintiff had owned 28% of Ogden's stock, which share was valued by him at approximately $1,403,-000 at the time of the divorce.[1] Prior to the divorce, R-W Service Systems entered into a stock purchase agreement with Ogden's stockholders for $5.3 million, less any operating losses by Ogden between the proposed date and the time the Interstate Commerce Commission allowed the parties to consummate the transaction. The purchase price was to be adjusted further by any other items that lessened the value of the stock. During this period, the federal government deregulated the trucking industry, resulting in a claimed devaluation of the worth of plaintiff's Ogden stock from $1,403,000 to $1,184,000, which reduction occurred after the divorce judgment.

In the parties' extensive property settlement agreement, among other things, plaintiff agreed to pay defendant $25,000 within 30 days of plaintiff's receipt of R-W's downpayment under the stock purchase agreement and to pay defendant $202,-000 in semiannual installments of $10,000 or more, plus interest on the unpaid balance at 7% per annum. The latter indebtedness was evidenced by a promissory note and interest was to accrue commencing with the receipt by plaintiff of R-W's downpayment under the stock purchase agreement. The semiannual payments were to be made within 30 days of R-W's semiannual payments to plaintiff under the stock purchase agreement. Both obligations, that is, the $25,000 in lump sum and the $202,000 in periodic payments, were conditioned upon R-W's performance of its obligations

---

[1] This valuation is based upon testimony of an R-W Service Systems official.

under the stock purchase agreement under the following language of the property settlement agreement:

"It is further agreed by the parties that the payment of principal and interest is conditional upon performance by R-W of the obligations imposed by the stock purchase agreement of September 10, 1979 and as amended December 17, 1979."

As a result of the reduction in the purchase price that R-W paid for the stock, plaintiff filed a motion on July 20, 1981, under GCR 1963, 528.3 for modification of the judgment of divorce, alleging that he did not receive from R-W as much as anticipated under the stock purchase agreement. This motion was denied on August 17, 1981.

On September 4, 1981, plaintiff moved for rehearing of the earlier motion, requesting that the judgment of divorce be modified for reasons of fairness and equity as well as mutual mistake in the determination of the property settlement agreement. This motion for rehearing was denied on September 14, 1981. No appeal was taken from either of these orders denying plaintiff relief.

On April 23, 1982, plaintiff filed a further motion for modification of the judgment of divorce, raising the same general reasons as in the previous motion for rehearing, but emphasizing the language making the plaintiff's obligation conditional upon "performance" by R-W under the property settlement agreement. On May 10, 1982, the trial court reduced the larger amount plaintiff had to pay under the property settlement agreement by $50,000, that is, from $202,000 to $152,-000. Defendant moved for rehearing, which motion was denied by the trial court in an opinion filed September 7, 1982. On November 15, 1982, an

order was entered pursuant to the opinion. Defendant has now appealed as of right.

GCR 1963, 528.3 requires motions brought under subsection (1) to be brought within one year of the entry of the judgment. Subsection (1) provides as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * *."

Plaintiff's motion was made pursuant to GCR 1963, 528.3 under subsection (1) for reasons of mutual mistake and under subsections (5) and (6) for reasons of fairness and equity. Subsections (5) and (6) provide:

"* * * (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

In granting the modification, the trial court did not specify which subsection gave it jurisdiction to make such modification, holding rather that the motion of July 20, 1981, and the motion for rehearing of September 4, 1981, served to meet GCR 1963, 528.3's requirement that the motion be brought within one year of entry of judgment.

The language of the court rule gives no indication that such a motion which is brought within the year and denied serves to toll the one year period for subsequent motions. Therefore, if plaintiff disagreed with the trial court's order of August

17, 1981, denying the motion, and the order of September 14, 1981, denying a rehearing on the motion, then plaintiff's remedy was to appeal such orders. Since plaintiff failed to do so within a year, we hold that the trial court had no jurisdiction to modify the judgment of divorce on the basis of mutual mistake after expiration of the one year period from the entry of the divorce judgment.

In spite of this, motions under subsections (5) and (6) are only required to be brought within a reasonable time. Thus, the trial court could have justifiably found that the motion of April 23, 1982, was brought within a reasonable time and, thus, modified the judgment of divorce for the reasons enumerated in subsections (5) and (6).

The term property settlement, as used in divorce parlance, is used interchangeably in describing the two different bases for divison of marital property: (1) based upon agreement of the parties and approval by the court; and (2) based upon an award by the court after trial on the merits.

In the within case, the parties negotiated and entered into a written property settlement agreement which the trial court incorporated into the judgment of divorce. Traditionally, once the parties enter into a property settlement and obtain approval of it, the trial court may not modify the settlement in the absence of fraud, duress or mutual mistake, or for such other causes as any other final judgment may be modified.[2]

---

[2] See, 27B CJS, Divorce, § 301(2), p 411, which provides:

"A divorce judgment * * *, in so far as it adopts a property settlement agreement, is a consent judgment and is as valid and binding on the parties as though made by the court without any stipulation or agreement of the parties. The fact that a divorce decree settling the property rights of the parties is made pursuant to a stipulation or agreement does not make it any less effective as an adjudication of what constitutes a just and proper distribution of their property than if it had been made on other evidence in the case." (Footnotes omitted.)

In their property settlement agreement, the parties said that payment was conditional upon performance by R-W of the stock purchase agreement with Ogden & Moffett. Plaintiff interprets that provision to mean that, if the amount paid by R-W to Ogden & Moffett turned out to be less than the parties comtemplated (and thus plaintiff would receive less for his Ogden & Moffett stock than contemplated by the parties), then the amount ($25,000 cash within 30 days of receipt of the downpayment under the stock purchase agreement and $202,000 in installments) payable by plaintiff to defendant should be proportionately reduced. Defendant says that the parties both knew that the price to be paid by R-W to Ogden & Moffett was subject to change and that neither a reduction nor an increase in price was intended to modify the amount of plaintiff's obligation to defendant under the property settlement agreement.

The parties' property settlement agreement referred to "a certain stock purchase agreement dated September 10, 1979, as amended December 17, 1979". The price under the stock purchase agreement was subject to revision in the event of certain specified happenings. There is no claim that R-W defaulted under the stock purchase agreement. The parties' property settlement agreement simply does not spell out what was to happen if the price paid by R-W to Ogden & Moffett was changed.

Plaintiff wants the trial court to make a property settlement for him that he did not make for himself. This is not a case where either R-W defaulted in its obligation to purchase the Ogden & Moffett stock or Ogden & Moffett defaulted in acquiring plaintiff's stock. Admittedly, if either of those defaults had occurred, we would be con-

fronted by a different case. But defaults did not occur.

Under the circumstances of this case, we interpret the provision of the property settlement agreement making payment conditional upon performance by R-W to relate to the *time* of payment. If the parties' property settlement agreement were held ambiguous, the trial court would possess inherent power to interpret and clarify the property settlement agreement's terms. However, we do not construe its incompleteness to be an ambiguity.

On rehearing, the trial court held that its decision to modify the property settlement ageement was correct because the modification "achieved a fair and equitable result and effectuated the intentions of the parties in the property settlement agreement". Thus, in part at least, the trial court's decision appears to have been based upon a finding that there was a mutual mistake of the parties as to the effect of the property settlement agreement.

Although we review equity cases *de novo,* we sustain the findings of the trial court unless convinced by review of the evidence that we would have been compelled to reach a different judgment had we heard the evidence in the first instance.

Here, the burden of presenting evidence to support reformation of the property settlement agreement was on plaintiff who sought the reformation. If the mistake is with respect to an extrinsic fact, reformation is not allowed even though the fact is one which probably would have caused the parties to make a different contract. The reason for this rule is that the court does not make a new contract for the parties.[3]

---

[3] *E R Brenner Co v Brooker Eng Co,* 301 Mich 719, 724; 4 NW2d 71 (1942). Affirming a decision for defendant, the Supreme Court held that the burden of proof was upon plaintiff to make out a case for reformation and that the evidence needed to be clear and convincing.

In the instant case, the only mistake of the parties was with respect to the final purchase price of the stock. Because this information was extrinsic to the property settlement agreement, we do not grant reformation. Stated another way, there was no mistake as to the instrument actually entered into.

It must be assumed that the parties considered the risks of the property settlement agreement that they made, especially in light of testimony that the parties knew the purchase price of the stock could be adjusted. Therefore, we do not believe the trial court had the power to make a new contract for the parties by modifying the property settlement agreement. Hence, we hold the trial court's finding of mutual mistake to be clearly erroneous.

The second factor on which the trial court based its holding was that fairness and equity required the modification. It is sometimes argued that recent cases[4] stand for the proposition that GCR 1963, 528.3 permits modification of a final property settlement when necessitated by fairness. These cases seem to cite *Ross v Ross*[5] and *Paul v Paul.*[6] Our reading of these cases indicates that the assertion that modification of a property settlement can be granted when necessitated by fairness is no more than *obiter dictum.*

---

The proofs indicated that only a mutual mistake as to an extrinsic fact was at best shown. The Court said:

"If the mistake is with respect to an extrinsic fact, although one which probably would have caused the parties to make a different contract, reformation will not be allowed, because courts cannot make a new contract for the parties."

[4] *Alexander v Alexander,* 103 Mich App 263, 266-267; 303 NW2d 202 (1981); *Villadsen v Villadsen,* 123 Mich App 472, 476; 333 NW2d 311 (1983); *Dougherty v Dougherty,* 48 Mich App 154, 158; 210 NW2d 151 (1973).

[5] 24 Mich App 19; 179 NW2d 703 (1970).

[6] 362 Mich 43; 106 NW2d 384 (1960).

GCR 1963, 528.3(5), allowing a party to be relieved from a judgment when "it is no longer equitable that the judgment should have prospective application", appears to apply only to injunctive or declaratory relief. That leaves GCR 1963, 528.3(6), which provides "any other reason justifying relief from the operation of the judgment".

In *Lark v Detroit Edison Co*,[7] we held that, for subsection (6) to apply, there must be a finding that the grounds for modification do *not* fall under subsections (1) through (5). Relief under subsection (6) is available only when extraordinary circumstances make it necessary to vacate the judgment to achieve justice.[8] In general, relief is granted under this provision only where the judgment was obtained by the improper conduct of the party in whose favor it was rendered.[9]

We are satisfied that a contract bargained for by two equally positioned parties is well outside the reach of this provision of the court rule. In the within case, there is no allegation that the alleged inequitable result was caused by any improper conduct of defendant. Thus, we conclude that the trial court was without authority to modify the property settlement agreement entered into by the parties.

In the within case, the divorce judgment incorporated the parties' property settlement agreement by reference, but specifically provided that the property settlement agreement was not merged in the divorce judgment. When a property settlement agreement is incorporated and merged

---

[7] 99 Mich App 280; 297 NW2d 653 (1980), *lv den* 410 Mich 906 (1981).

[8] *Id.*

[9] *Kaleal v Kaleal,* 73 Mich App 181, 189; 250 NW2d 799 (1977), citing 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 189.

in a divorce judgment, it becomes a disposition by the court of the property. But, when not merged in the divorce judgment, the property settlement agreement may only be enforced by resort to the usual contract remedies and not as part of the divorce judgment.[10]

Thus, in the within case, by providing that the property settlement agreement was not merged in the divorce judgment, the parties lifted enforcement out from under GCR 1963, 528.3. This analysis does not, however, aid plaintiff because, for the reasons indicated, we have already declined to find ambiguity, and thus find that the trial court lacked inherent power to interpret and clarify the terms of the property settlement agreement.

Therefore, consistent with this opinion, we reverse the order of the trial court modifying the judgment of divorce and reinstate the original divorce judgment.

Reversed.

---

[10] See 27B CJS, Divorce, § 301(2), subds c and d, pp 413, 414.