SMITH v SMITH

Docket No. 295243. Submitted February 1, 2011, at Grand Rapids. Decided May 26, 2011, at 9:05 a.m. Leave to appeal denied, 490 Mich 1005.

Linda L. Smith (plaintiff) obtained a divorce from Stanley A. Smith (defendant) in the Grand Traverse Circuit Court, Family Division. The parties had entered into a property-settlement agreement that included a division of their retirement accounts. The value of defendant's individual retirement account (IRA) had been calculated using a statement disclosed during discovery, and the value of his IRA had increased substantially by the time the property-settlement agreement was signed. When it entered the divorce judgment, the court, Thomas G. Power, J., concluded that the property-settlement agreement could not be adjusted to take into account the increase in the IRA's value. Plaintiff appealed.

The Court of Appeals *held*:

Property-settlement agreements are generally final and cannot be modified. A court is bound by the terms of the agreement in the absence of fraud, duress, mutual mistake, or severe stress that prevented a party from understanding in a reasonable manner the nature and effect of the act in which he or she was engaged. Parol evidence is generally not admissible to vary or contradict the terms of a clear and unambiguous contract. In this case, the parties used fixed values for all the retirement accounts. Because the terms of the agreement were unambiguous, the trial court was bound by them and the parties were required to live up to their agreement. There was no indication that the parties intended to take into account market fluctuations when dividing the retirement accounts. The increase in the value of defendant's IRA was an extrinsic fact not contained in the property-settlement agreement, and there was no mutual mistake regarding the agreement actually entered into. There was no violation of the full-disclosure provision of the agreement. Stocks fluctuate daily, and the parties could have fixed the values of the accounts at any time or expressly provided that the division of the retirement accounts was subject to modification for market fluctuations.

Affirmed.

DIVORCE — PROPERTY SETTLEMENTS — MODIFICATION — INDIVIDUAL RETIREMENT
ACCOUNTS — FLUCTUATION IN VALUE.

Property-settlement agreements are generally final and cannot be
modified; a court is bound by the terms of the agreement in the
absence of fraud, duress, mutual mistake, or severe stress that
prevented a party from understanding in a reasonable manner the
nature and effect of the act in which he or she was engaged; parol
evidence is generally not admissible to vary or contradict the terms
of a clear and unambiguous contract; a change in the value of an
individual retirement account following the negotiation of its
division in a property-settlement agreement that does not address
fluctuations in market value is an extrinsic fact not contained in
the agreement and not a mutual mistake permitting modification
of the agreement.

*Bowerman, Bowden, Ford, Clulo & Luyt, P.C.* (by
*Kurt M. Bowden*), for plaintiff.

*Mallory, Cunningham, Lapka, Scott & Selin, PLLC*
(by *Keldon K. Scott* and *Carrie E. F. Huff*), for defendant.

Before: OWENS, P.J., and MARKEY and METER, JJ.

PER CURIAM. Plaintiff appeals as of right the parties'
divorce judgment. We affirm.

Plaintiff and defendant had been married for more
than 40 years. During their marriage, they accumulated
substantial assets together. Extensive discovery was
conducted, and eventually the parties entered into a
property-settlement agreement (PSA) on August 25,
2009. The PSA divided all the parties' assets, including
all retirement accounts. The value of defendant's indi-
vidual retirement account (IRA) was calculated using
his February 2009 IRA statement, which had been
disclosed during discovery. However, by the time the
parties negotiated and signed the PSA in August, the
value of the IRA had increased by nearly $1.4 million.

Thereafter, plaintiff moved to enter a divorce judgment consistent with the terms of the PSA. In plaintiff's proposed judgment, the following language appeared in the "Retirement Account" section:

> An amount shall be transferred from [defendant's] IRA to [plaintiff's] IRA such that, immediately upon such transfer, the amount remaining in [defendant's] IRA will be equal to the sum of (i) the amount in [plaintiff's] IRA at the time immediately preceding the transfer plus (ii) the amount transferred from [defendant's] IRA to [plaintiff's] IRA plus (iii) $307,955.

The effect of this language would have been that the increase in the value of defendant's IRA was taken into account for the property settlement. Defendant opposed the inclusion of this language and argued that plaintiff was not entitled to share in the increase in his IRA. This provision was not included in the final judgment.

Included in the PSA was a full-disclosure provision. Although the disclosure provision was not spelled out at length in the PSA, it was spelled out in the divorce judgment, which each party signed. Plaintiff argued that the full-disclosure provision required defendant to have informed plaintiff of the increase in value of the IRA.

The trial court concluded that defendant had no duty to disclose the increase in value of the IRA. The court reasoned that defendant had provided plaintiff with a copy of the February 2009 IRA statement and plaintiff could have calculated the present value by applying current market values to the stocks listed in the IRA. The court also found that the PSA could not be adjusted to take into account the increase in the value of the IRA because the parties had used fixed dollar amounts when they negotiated the division of the retirement accounts.

On appeal, plaintiff argues that because each party, under the retirement-accounts section of the PSA, was

awarded half the total value of the retirement accounts and the value of defendant's IRA rose, she is entitled to share in the increase in value.

We review this issue de novo. See *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). When a court interprets a contract, the entire contract must be read and construed as a whole. *Duval v Aetna Cas & Surety Co*, 304 Mich 397, 401; 8 NW2d 112 (1943). All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible. *Id.* Also, courts may not change or rewrite plain and unambiguous language in a contract under the guise of interpretation because "the parties must live by the words of their agreement." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007).

Property-settlement agreements are, as a general rule, final and cannot be modified. *Zeer v Zeer*, 179 Mich App 622, 624; 446 NW2d 328 (1989). It is well settled that property-settlement agreements are enforceable and that a court is bound by the terms of the agreement in the absence of fraud, duress, mutual mistake, or severe stress that prevented a party from understanding in a reasonable manner the nature and effect of the act in which he or she was engaged. *Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990). Parol evidence is generally not admissible to vary or contradict the terms of a clear and unambiguous contract. *Hamade v Sunoco, Inc (R & M)*, 271 Mich App 145, 166-167; 721 NW2d 233 (2006).

The terms in the retirement-accounts section of the PSA were clear. The parties used fixed values for all the retirement accounts. Defendant was to retain his IRA, and plaintiff was to retain all other retirement accounts. To equalize the value each was receiving, defen-

dant was required to transfer approximately $1.4 million to plaintiff. Because the terms were unambiguous, the trial court was bound by them, *Keyser*, 182 Mich App at 269-270, and the parties were required to live up to the terms of their agreement, *Harbor Park Market*, 277 Mich App at 130-131.

Also, when looking at the PSA as a whole, there is no indication that the parties intended to take into account market fluctuations when dividing the retirement accounts. In the investment-property section, the PSA indicated that the investment accounts would be "divided evenly in kind," which arguably took into account market fluctuations. There was no such language in the retirement-accounts section.

This case bears some similarities to *Marshall v Marshall*, 135 Mich App 702; 355 NW2d 661 (1984). In *Marshall*, the plaintiff owned 28 percent of the stock in a company. *Id.* at 704-705. Before the divorce, another company had entered into a purchase agreement for the stock. *Id.* at 705. The purchase agreement allowed for the stock price to be adjusted for certain factors. *Id.* As part of the property-settlement agreement, the plaintiff was awarded the stock. *Id.* at 704. In exchange, the plaintiff was required to pay the defendant $25,000 within 30 days of the down payment for the stock-purchase agreement and an additional $202,000. *Id.* at 705. The plaintiff's payment obligation was conditioned on the sale of the stock under the stock-purchase agreement. *Id.* at 705-706.

The sale went through; however, the price of the stock decreased. *Id.* at 706. Thus, the plaintiff received less than had originally been contemplated by the parties. *Id.* The plaintiff argued that the $25,000 and $202,000 payments should have been reduced in proportion to the decrease in stock price. *Id.* at 706, 709.

The trial court agreed and modified the payment. *Id.* at 706, 710. The Court of Appeals, however, reversed. *Id.* at 711. The Court stated that the property-settlement agreement only conditioned payment on the sale of the stock, which did in fact occur. *Id.* 709. The Court noted that nothing in the property-settlement agreement addressed what would happen if the price of the stock decreased. *Id.* The Court also stated:

> [T]he burden of presenting evidence to support reformation of the property settlement agreement was on the plaintiff who sought reformation. If the mistake is with respect to an extrinsic fact, reformation is not allowed even though the fact is one which probably would have caused the parties to make a different contract. The reason for this rule is that the court does not make a new contract for the parties.
>
> In the instant case, the only mistake of the parties was with respect to the final purchase price of the stock. Because this information was extrinsic to the property settlement agreement, we do not grant reformation. Stated another way, there was no mistake as to the instrument actually entered into.
>
> It must be assumed that the parties considered the risks of the property settlement agreement that they made, especially in light of testimony that the parties knew the purchase price of the stock could be adjusted. Therefore, we do not believe the trial court had the power to make a new contract for the parties by modifying the property settlement agreement. Hence, we hold the trial court's finding of mutual mistake to be clearly erroneous. [*Id.* at 710-711.]

In the present case, the increase in value of the IRA was an extrinsic fact not contained in the agreement. There was no mistake regarding the agreement actually entered into. Therefore, the parties must be held to their agreement.

Moreover, there was no violation of a duty to disclose. The values of the retirement accounts were stated in

fixed terms. It is well known that stocks fluctuate on a daily basis. The parties were free to fix the values of the accounts at any time. They could have fixed the value at the time the divorce complaint was filed or at the time the divorce judgment was entered. They could have expressly provided that the division of the retirement accounts was subject to modification for market fluctuations. However, they did not do any of this. They negotiated the PSA and established the value of all the accounts, including defendant's IRA. Defendant's IRA was calculated using his February 2009 account statement. Plaintiff had a copy of the statement and was capable of calculating the current market value of the stocks contained in the IRA. By way of her argument today, plaintiff essentially asks us to rewrite the agreement to her advantage, and we cannot do so. *Harbor Park Market*, 277 Mich App at 130-131.

Affirmed.

OWENS, P.J., and MARKEY and METER, JJ., concurred.