*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH F. NEUMAN, TRACIE SCOTT,
VALERIE CARRICK, and WENDY VAN
DUIJVENBOODE,

UNPUBLISHED
October 10, 2024
11:39 AM

      Plaintiffs-Appellants,

v

No. 368648
Oakland Circuit Court
LC No. 2023-200123-CZ

LONG LAKE SHORES ASSOCIATION,

      Defendant-Appellee.

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

In this contractual dispute, plaintiffs appeal by right following the entry of a stipulated order of dismissal by the trial court. Plaintiffs challenge the trial court's earlier opinion and order denying plaintiffs' motion for partial summary disposition and granting partial summary disposition in favor of defendant under MCR 2.116(I)(2). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant is a homeowners association that was incorporated in 1958 to maintain and enforce the building and use restrictions governing real property in the Long Lake Shores Subdivision (the Subdivision) and to manage the affairs of the neighborhood. In 1977, defendant adopted amended bylaws (the bylaws) that govern defendant and its board of directors (the board). In 2023, the board decided to enter into a contract with a property management company, McShane and Associates (McShane). At the 2023 annual meeting of association members, the board presented a proposed budget that included McShane's annual fee of $11,000. The board also asked the members to vote on a proposed increase in annual member dues from $200 to $400. The members present at the meeting approved the budget and dues increase.

In May 2023, plaintiffs filed suit against defendant, seeking declaratory relief on multiple grounds, including that the board lacked the authority to hire McShane and that the contract entered into was null and void. After defendant answered the complaint, plaintiffs moved for partial summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material

-1-

fact that the board had violated the bylaws by entering into a management contract with McShane for compensation. Defendant opposed the motion, arguing that the bylaws empowered the board to hire a property management company and that any reference in the bylaws to an "agent" refers to community volunteers appointed by the board who serve without compensation. Defendant argued that McShane was a contractor or vendor, not an agent under the bylaws. The trial court denied plaintiffs' motion and granted partial summary disposition in favor of defendant under MCR 2.116(I)(2), stating in relevant part:

> The Court having reviewed the Bylaws finds that they are unambiguous. The Bylaws require the Board of Directors to manage the business property and affairs of the Association. In addition, the Bylaws provide that any agent appointed by the Board of Director's [sic] must be appointed without compensation. The term "agent" is undefined in the Bylaws. Where a term is not defined in a contract, the Court must interpret such a term in accordance with its commonly used meaning. *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 215[; 737 NW2d 670 (2007)]. . . . In addition[,] Black's Law Dictionary, (6th ed[], 1998) defines "agent" as "[a] person authorized by another (principal) to act for or in place of him." Reading the Bylaws, as a whole, the Court finds that the Board of Directors is permitted to hire a third-party management company to assist it in its duties to manage the business property and affairs of the Association provided that the ultimate management and decision-making authority is retained and exercised by the Board of Directors and the management company does not exercise any autonomy over the operations of the Association. Put another way, the Board of Directors may hire a third-party management company with compensation so long as that company is not acting as an agent of the board. Thus, the Board of Directors does not lack the authority to hire a third-party management company with compensation as Plaintiff suggests.

Regarding plaintiffs' request for the trial court to determine the validity of the management contract, the trial court stated: "The Court has not been provided with a copy of the management agreement and McShane (whose rights would surely be affected by such as decision) is not a party to this action." Accordingly, the trial court concluded, "this issue is not properly before the Court, and the Court declines to address this issue at this time as it appears to be premature."

The trial court subsequently entered a stipulated order dismissing plaintiffs' remaining claim for declaratory relief with prejudice, disposing of the last pending claim and closing the case. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). MCR 2.116(I)(2) states: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any

material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id*. (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted). "The proper interpretation of a contract is also a question of law that we review de novo." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). "This Court also reviews de novo the proper scope and application of Michigan's common law." *Roberts v Kathryn Salmi*, *LPC*, 308 Mich App 605, 612; 866 NW2d 460 (2014).

## III. ANALYSIS

Plaintiffs argue that defendant violated its bylaws when the board hired McShane to manage its affairs, because the bylaws restricted the board from hiring agents for compensation. Therefore, plaintiffs argue, the trial court erred by denying their motion for partial summary disposition and by granting partial summary disposition to defendant. We disagree.

"When interpreting a contract, a court's obligation is to determine the intent of the contracting parties." *Barclae v Zarb*, 300 Mich App 455, 485; 834 NW2d 100 (2013). "If the language of the contract is unambiguous, the court must construe and enforce the contract as written." *Id*. "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "When a court interprets a contract, the entire contract must be read and construed as a whole." *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011).

"Under ordinary contract principles, if the language of a contract is clear and unambiguous, its construction is a question of law for the court." *Michigan Nat'l Bank v Laskowski*, 228 Mich App 710, 714; 580 NW2d 8 (1998). "It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*, 468 Mich at 469. "As [our Supreme Court] has repeatedly stated, the fact that a contract does not define a relevant term does not render the contract ambiguous." *Terrien v Zwit*, 467 Mich 56, 76; 648 NW2d 602 (2002). "Rather, if a term is not defined in a contract, we will interpret such term in accordance with its commonly used meaning." *Id*. (quotation marks and citations omitted).

"Operating agreements, such as a corporation's bylaws, are intended to govern the future conduct of the entity and its members." *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015). "Generally, an entity's bylaws or membership agreement may provide for the regulation and management of its affairs as long as the provision is not inconsistent with law or the articles authorizing the entity." *Id*. at 254-255. "When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members." *Id*. at 255. In this case, it is undisputed that defendant had the authority to adopt bylaws. To the extent the bylaws do not conflict with defendant's articles of incorporation or this state's law, the bylaws constitute a binding contractual agreement between defendant and its members.

Defendant's bylaws state in relevant part:

## Article II

### Purposes

The purposes of the Association shall be:

1. To maintain, uphold and enforce building and use restrictions of record in connection with the Long Lake Shores Subdivision located in Bloomfield Township, Oakland County, Michigan.

2. To own, operate, maintain, improve, develop and repair recreational facilities in said Subdivision for the benefit and convenience of all members of this corporation.

3. To initiate, maintain, carry on, assist and develop suits, actions, activities, petitions, plans and projects for the improvement, convenience, benefit and welfare of said Subdivision and for all of the members of this corporation.

4. To hold, sell, mortgage, lease, exchange, pledge, encumber, hypothecate or otherwise deal in or dispose of property, real, personal or mixed, of every name, nature, kind and description, incidental, necessary, convenient or desirable for carrying out or connected with the purposes and objects of this corporation.

\* \* \*

## Article IV

### Board of Directors

#### Section 1 – Number and Term of Directors

The business property and affairs of this Association shall be managed by a Board of Directors composed of 7 persons who shall be members of the Association. Each Director shall hold office for the term for which he is elected and until his successor is elected and qualified. Election of the Board of Directors shall be by vote of the members at large.

\* \* \*

#### Section 4 – Power to Elect Officers

The Board of Directors shall select a President, Vice President, Secretary, and a Treasurer from their members.

#### Section 5 – Power to Appoint Other Officers, Agents, and Committees

The Board of Directors shall have power to appoint such other officers, agents, and committees as may be deemed necessary for transaction of the business of the Association.

### Section 6 – Removal of Officers and Agents

Any officer or agent may be removed by the Board of Directors whenever in the judgment of the Board the best interests of the Association will be served.

### Section 7 – Power to Fill Vacancies

The Board shall have the power to fill any vacancy in office of any officer, agent or committee occurring for any reason whatsoever.

### Section 8 – Delegation of Powers and Duties

For any reason deemed sufficient by the Board of Directors, whether occasioned by absence or otherwise, the Board may delegate all or any of the powers and duties of any officer to any other officer or director, but no officer or director shall execute, acknowledge, or verify any instrument in more than one capacity.

### Section 9 – Power to Appoint Executive Committee

The Board of Directors shall have the power to appoint by resolution an Executive Committee composed of three or more of the directors who, to the extent provided in such resolution, shall have and exercise the authority of the Board of Directors in the management of the business of the Association between meetings of the Board of Directors.

### Section 10 – Power to Require Bonds

The Board of Directors may require any officer or agent to file with the Association a satisfactory bond conditioned for faithful performance of his duties, the cost of which shall be paid by the Association.

### Section 11 – Compensation

Members of the Board of Directors, the officers, and agents of the Association shall serve without compensation, except that in the discretion of the Board there may be an officer designated as Executive Secretary who shall serve at the pleasure of the Board and at such compensation as it may from time to time fix and determine.

We conclude that the bylaws are unambiguous and provide that defendant's purposes include enforcing use restrictions, maintaining recreational facilities, and maintaining actions for the benefit of the Subdivision, among other things. As for the board, its duties include managing the business property and affairs of defendant. In doing so, the board selects officers from its

members.  Furthermore, the board may appoint other officers, as well as agents and committees, as needed to transact defendant's business.  Any officer or agent may be removed "whenever in the judgment of the [board of directors] the best interests of [defendant] will be served."  The board may fill vacancies in office of any officer, agent or committee for any reason.  Members of the board of directors, as well as the appointed officers and agents, must serve without compensation.  Although the bylaws do not explicitly grant the board the power to contract with third parties for compensation to assist in carrying out defendant's purposes, the parties agree that the board possesses that power.

Plaintiffs argue that McShane, unlike other third-party vendors, is an "agent" of defendant, and therefore is prohibited from serving with compensation.  We disagree.  The term "agent" is used multiple times throughout Article IV of the bylaws, which governs the conduct of defendant's board.  The term "agent" is undefined by the bylaws and must be interpreted in accordance with its commonly used meaning. *Terrien*, 467 Mich at 76 (quotation marks and citations omitted).  "It is appropriate to consult a lay dictionary when defining common words or phrases that have not acquired a unique meaning at law because 'the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary and not a legal dictionary.' " *Breakey v Dep't of Treasury*, 324 Mich App 515, 526; 922 NW2d 397 (2018), quoting *Robinson v City of Detroit*, 462 Mich 439, 457 n 13; 613 NW2d 307 (2000).  An agent is "one that acts or exerts power," or "one who is authorized to act for or in the place of another." *Merriam-Webster's Collegiate Dictionary* (11th ed).  An agent is "[s]omeone who is authorized to act for or in place of another[.]" *Black's Law Dictionary* (11th ed).

The trial court properly found that McShane was not an agent of defendant or its board of directors, but rather a professional property management company hired by defendant to assist the board in managing the affairs of the Subdivision and defendant.  In the first instance, we note that McShane was not "appointed" by the board, but rather was hired by way of a contract for services; the payment of McShane's annual fee was later approved by a vote of the membership.  Further, the bylaws when construed as a whole, do not restrict the board from hiring (or presenting a proposal to the members for the hiring of) a company such as McShane.  The limitation of serving "without compensation" applies specifically to the board, officers, and agents of defendant.  Article IV, § 5 of the bylaws provides that the board may appoint "agents" as well as "other officers" or "committees."  The board has discretion when making such appointments, and the power to remove an appointee in the best interests of defendant.  Read in context, it is clear that the "agents" contemplated by the bylaws are agents appointed by the board to act on defendant's behalf, not outside individuals or corporations hired to do a specific job.  As stated, the board presented the members at the annual meeting with a proposed budget and specifically asked the members to approve the hiring of McShane.  The members present approved the proposal.  The record is devoid of evidence demonstrating that McShane was appointed as an agent of the board or otherwise given the authority to act in the place of the board or defendant.  Accordingly, the trial court correctly granted partial summary disposition to defendant under MCR 2.116(I)(2), and denied the same to plaintiffs under MCR 2.116(C)(10).  See *El-Khalil*, 504 Mich at 159.

Plaintiffs also raised in the trial court, and raise again on appeal, the issue of whether the management agreement between defendant and McShane is unenforceable and void.  These issues were never decided by the trial court; further, as the trial court noted, the management agreement was not provided to the trial court and McShane was not a party to plaintiffs' action.  Because

"[a]ppellate review is limited to issues actually decided by the trial court," *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994), this issue is not properly before this Court and we decline to address it.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood