*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE JEANNE SEIKEL,

        Plaintiff-Appellee,

v

JOSEPH CHRISTOPHER SEIKEL,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2025
10:10 AM

No. 371725
Washtenaw Circuit Court
LC No. 23-000507-DM

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant, Joseph Christopher Seikel, appeals by leave granted[1] the trial court's order granting the motion for reconsideration in favor of plaintiff, Michelle Jeanne Seikel. Defendant argues the trial court erred in finding the parties' settlement agreement required defendant to pay the parties' 2023 joint tax liability. We agree and therefore reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

The parties married in 2015, and plaintiff filed for divorce in 2023. The parties entered into a Settlement Agreement (the agreement) on March 13, 2024, that was incorporated into the March 27, 2024 Judgment of Divorce (JOD). Defendant then filed a Motion to Enforce the JOD on April 30, 2024. Defendant claimed that plaintiff refused to pay her share of the parties' 2023 state and federal tax liabilities pursuant to the agreement. Defendant asserted that paragraph 33 of the agreement required the parties to equally divide any refunds from their 2023 joint tax return, as well as equally divide and pay any tax liabilities. The parties' joint 2023 tax return resulted in a tax liability of approximately $35,000. Defendant claimed he paid his half of the liability but plaintiff refused to pay her half.

---

[1] *Seikel v Seikel*, unpublished order of the Court of Appeals, issued February 14, 2025 (Docket No. 371725).

Plaintiff also filed a Motion to Enforce the JOD seeking, among other things, an order requiring defendant to pay the 2023 tax liability for the businesses he was awarded under the JOD. Plaintiff stated that, throughout the divorce proceedings, defendant maintained that his interests in Targaryen Holding, LLC (Targaryen) and Octane Environmental, LLC (Octane) were his separate property. She argued that, pursuant to paragraph 22 of the parties' agreement, defendant was solely liable for the tax liability. Plaintiff believed the high tax liability was due to defendant receiving $130,000 in income from the businesses in 2023: $100,000 from Octane, and $30,000 from Targaryen. Because defendant was awarded both businesses in the divorce, and assumed all liabilities associated with the businesses under paragraph 22, plaintiff argued that defendant was solely responsible for the 2023 tax liability. Plaintiff paid $4,056 in taxes, which she claimed did not include the liability generated from the business income. Plaintiff refused to pay any more in taxes unless defendant paid plaintiff half of his business income.

On June 5, 2024, the trial court held a hearing on the motions to enforce the JOD. Defendant explained that he bought and sold Octane during the marriage, and $20,000 in proceeds from the sale were deposited in the parties' joint bank account. Defendant bought Octane in 2017 and averred that the company operated at a loss throughout the marriage. Defendant asserted the marital estate took advantage of those losses to reduce any tax liability throughout the marriage, and also received an $80,000 loan from Octane that was ultimately forgiven with the sale in 2023. Thus, the 2023 tax liability comprised of taxes on the $20,000 generated from the sale of Octane, and forgiveness of the $80,000 loan, constituted $100,000 in income. As to Targaryen, defendant affirmed that he still owned a 25% interest in the company, and was awarded this interest in the JOD free and clear of any claim by plaintiff. Defendant stated that he received $30,000 in income from Targaryen in 2023 during the marriage. Defendant argued that the trial court should enforce the agreement as written, which required the parties to equally divide and timely pay the 2023 tax liability, pursuant to paragraph 33. Paragraph 33 states:

> 33. The parties shall file joint tax returns for 2023. The parties shall equally divide and pay the accountant's fees for preparing the joint 2023 tax returns. Both parties shall be afforded a reasonable opportunity to review their 2023 joint tax returns before signing and filing same. The parties shall equally divide any refunds/overpayments emanating therefrom; and conversely the parties shall equally pay in a timely manner any 2023 federal and state tax liabilities.

Plaintiff argued that paragraphs 22 and 31 of the agreement controlled, and dictated that defendant solely pay the 2023 tax liability because it is related to businesses that defendant received pursuant to the JOD. Paragraphs 22 and 31 state:

> 22. Business Interests:
>
> a.      Husband shall become and be the sole and separate owner of his interests in Targaryen Holdings LLC, free and clear of all claims by Wife; and he shall be individually responsible for all liabilities associated therewith, for which he shall fully indemnify, defend, and hold Wife harmless.

b. Husband warrants and represents that he no longer possesses any interests in Octane Environmental LLC. Notwithstanding the forgoing, Husband shall fully indemnify, defend, and hold Wife harmless for all liabilities associated therewith.

\*\*\*

## TAX MATTERS

31. Each party shall assume all tax consequences of the assets which he/she receives pursuant to this Agreement.

The trial court stated that paragraphs 22 and 31 seemed to conflict with paragraph 33, creating an ambiguity as to the apportionment of tax liability for 2023. The trial court found the agreement was ambiguous. The trial court ordered an evidentiary hearing on the issue to take place on July 9, 2024, with the parties' accountant testifying as to the 2023 joint tax return.

However, on June 27, 2024, defendant filed a motion for reconsideration urging the trial court to reconsider its ruling that the agreement was ambiguous. Defendant requested the trial court grant his motion to enforce the JOD because paragraph 33 of the agreement was the only section of the agreement applicable to 2023 taxes. Defendant argued paragraphs 22 and 31 only apply to future tax liability for the businesses awarded to defendant in the divorce, not past tax liability. Defendant asserted the language of paragraph 33 was clear and unambiguous.

The trial court "granted" defendant's motion for reconsideration in plaintiff's favor. The trial court found, "The parties' Settlement Agreement is clear and unambiguous relative to Sections 22, 31, and 33." The trial court ordered as follows:

1. Defendant's Motion for Reconsideration is granted in favor of Plaintiff.

2. The Parties shall equally divide the liabilities and/or refunds of the 2023 Joint Tax Return after the $100,000 in capital gains associated with the sale of Defendant's interests in Octane Environmental LLC and $30,000 of income from Targaryen Holdings LLC are removed from the calculation prior to the division.

3. If the Plaintiff has incurred any liabilities associated with Targaryen Holdings LLC or Octane Environmental LLC, she shall be indemnified and made hold [sic] by Defendant within 30 days of this order.

Defendant now appeals.

## II. DISCUSSION

Defendant argues the trial court erred in deducting the capital gains and income from his businesses from the calculation of the parties' 2023 tax liability because the plain language of the agreement requires an equal division of the full tax liability. We agree.

## A. STANDARD OF REVIEW

"A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract." *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010) (quotation marks and citation omitted). "The same legal principles that govern the construction and interpretation of contracts govern the parties' purported settlement agreement in a divorce case." *Id*. The existence and interpretation of a contract is a question of law that this Court reviews de novo. *Id*., citing *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Zwiker v Lake Superior State University*, 340 Mich App 448, 474; 986 NW2d 427 (2022) (quotation marks and citation omitted).

## B. ANALYSIS

The plain language of the parties' agreement is unambiguous and requires an equal division of the 2023 tax liability. Contracts must be read and construed as a whole. *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011). "All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible." *Smith*, 292 Mich App at 702. Courts must examine the language of the contract according to its plain and ordinary meaning. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). A contract is ambiguous if its provisions have conflicting interpretations. *Zwiker*, 340 Mich App at 475. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Smith Trust*, 480 Mich at 24. "[C]ourts may not change or rewrite plain and unambiguous language in a contract under the guise of interpretation because the parties must live by the words of their agreement." *Smith*, 292 Mich App at 702 (quotation marks and citation omitted). Property-settlement agreements are final and cannot be modified. *Id*. "It is well settled that property-settlement agreements are enforceable and that a court is bound by the terms of the agreement in the absence of fraud, duress, mutual mistake, or severe stress…." *Id*.

Reading the parties' agreement as a whole shows its plain meaning is clear and unambiguous. See *Smith*, 292 Mich App at 702. Paragraph 22 is found under the Property Settlement section of the agreement. In this section, the marital assets and debts are divided, including the marital home, vehicles, investment accounts, business interests, etc. Paragraph 22 awarded defendant his interest in Targaryen, free and clear of any claimed interest by plaintiff. The paragraph goes on to establish that defendant no longer owns an interest in Octane, but clarified that defendant is responsible for any liabilities associated with Octane. With that, defendant assumed all liabilities associated with the businesses. Under the section titled "Tax Matters", paragraph 31 provides that "[e]ach party shall assume all tax consequences of the assets which he/she receives pursuant to this Agreement."

The trial court found that paragraphs 22 and 31 conflicted with paragraph 33, which dictates the parties must jointly file taxes for the year 2023 and equally divide and pay and tax liability. However, these provisions can be read in harmony. Like any division of marital assets in a judgment of divorce, the division in the parties' agreement here is prospective. Meaning, from the date the judgment is entered, that party assumes an asset awarded to the party and any liabilities associated with that asset. But before the division of assets occurred in this case, these assets were jointly owned by both parties as part of the marital estate. Thus, it makes sense the parties would

agree to jointly file taxes for 2023 and equally divide any tax liability, because the parties' income and assets were jointly owned as part of the marital estate. But from the date of the JOD onward, defendant would become solely liable for the taxes associated with the assets he was awarded in paragraph 22, pursuant to paragraph 31.

As defendant argues, it would not make sense to deduct the income and capital gains generated from Targaryen and Octane from plaintiff's share of the 2023 tax liability because the income and capital gains are attributed to the marital estate, not solely to defendant. 2023 was the last full year the parties were married and thus had a marital estate subject to joint tax liability. The tax liability was already fixed before defendant was awarded the business interests in the divorce. Just because the tax bill came after the parties entered into the settlement agreement and subsequent JOD, does not mean that defendant is solely liable for tax liabilities arising before the division of assets. For example, the parties' agreement also awarded plaintiff two investment accounts. If plaintiff had cashed out these accounts in 2023, that would have been a capital gain (or loss) attributable to the marital estate. It would not make sense to deduct that amount from the parties' 2023 tax liability just because plaintiff was awarded those accounts prospectively in the divorce. Both defendant and plaintiff would still be equally liable pursuant to paragraph 33.

Absent an indication of fraud, duress, mutual mistake, or severe stress, the agreement must be construed and enforced according to its plain terms. See *Smith*, 292 Mich App at 702. The plain terms of paragraph 33 clearly and unambiguously require the parties to equally divide and pay the 2023 tax liability, without limitation. If the parties wanted to limit their respective shares of the 2023 tax liability to assets each party was awarded in the divorce, they could have added limiting language in paragraph 33, as they did in other parts of the agreement. For example, under paragraph 24(c), defendant was awarded treasury bonds "[s]ubject to Section 13," which provided the savings bonds are held for the benefit of the minor children's college education. This shows the parties limited the division of assets when they intended to do so. No such limiting language is found in paragraph 33, however. Therefore, the trial court erred when it required the parties to remove the income and capital gains associated with Octane and Targaryen from the calculation of the parties' 2023 joint tax liability. Courts do not have the power to change plain and unambiguous language in an agreement because the plain and unambiguous language reflects the parties' intent as a matter of law. See *Smith Trust*, 480 Mich at 24; *Smith*, 292 Mich App at 702.

The trial court did not err in finding the agreement was unambiguous. However, the trial court incorrectly interpreted the plain meaning of the agreement and added language "under the guise of contract interpretation." See *Smith*, 292 Mich App at 702. We reverse and remand for the parties to effectuate the terms of their agreement as written, which requires an equal division and payment of the 2023 tax liability. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-5-