*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA ANDERSON,

      Plaintiff-Appellee,

v

LAWRENCE MARK, Personal Representative of the
ESTATE OF ARTHUR MARK III,

      Defendant-Appellant.

UNPUBLISHED
January 5, 2023

No. 358735
Genesee Circuit Court
LC No. 03-251311-DO

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Lawrence Mark, the personal representative of defendant, Estate of Arthur Mark III, appeals as of right the circuit court's order denying defendant's motion seeking enforcement of the life insurance provision in the judgment of annulment. For the reasons stated in this opinion, we reverse.

## I. FACTUAL BACKGROUND

Plaintiff and Arthur Mark III were married on August 28, 2003. A little over three months later, plaintiff filed a verified complaint to annul the marriage. Plaintiff alleged that the marriage had been based on fraud and lack of intent of Arthur on being plaintiff's partner and that he refused to live with plaintiff as husband and wife, making their marriage void *ab initio*. Plaintiff and Arthur consented to entry of a judgment of annulment by the Genesee County Family Court Division. The judgment ordered and adjudged that the marriage was void *ab initio* pursuant to MCL 552.1 and MCL 552.2. The judgment stated that the parties had no children, no real property, and divided their personal property and bank accounts as held in their respective possession. The judgment further provided that each party waived any interest as a beneficiary to, among other things, the proceeds of any pension, annuity, or retirement benefits, or accumulated contribution, such interests being terminated upon entry of the judgment. The judgment also provided in relevant part:

-1-

<u>STATUTORY INSURANCE PROVISION</u>

IT IS HEREBY ORDERED AND ADJUDGED that unless otherwise stated below any rights of either party as a named beneficiary or by assignment during or in anticipation of marriage in any policy or contract of life insurance, endowment, or annuity insurance on the life of the other are extinguished.

Each party acknowledges that, notwithstanding the language of this clause, they have been advised by their representative counsel that it shall be the responsibility of each party to make the appropriate changes in beneficiary designation of any policies on his/her life to effectuate the intent of this judgment in light of a recent decision in the Federal 6th Circuit Court, <u>Metropolitan Life Ins v. Pressley</u>, no 94-2093, regarding the effect of divorce on beneficiary designation.

The judgment further specified "that the Court shall retain jurisdiction of this matter for purposes of carrying out the provisions of the property settlement as granted." The last page of the judgment indicates that the family court judge signed the judgment, his deputy clerk countersigned it, and plaintiff and her counsel each signed it. Arthur signed the document and indicated his status as an in pro se defendant.

Arthur died intestate on July 12, 2020. Lawrence was appointed the personal representative of Arthur's estate on August 28, 2020. Lawrence discovered that Arthur's life insurance policy, MetLife Insurance Policy #22007008474 (MetLife policy), in the amount of approximately $68,822.87, still featured plaintiff as the beneficiary. Lawrence sought the disbursal of the proceeds into the estate but plaintiff claimed entitlement to the proceeds. The dispute between the estate and plaintiff over the insurance proceeds prompted Lawrence to petition for and obtain from the Genesee County Probate Court an order requiring payment of the proceeds of the policy to the estate. The parties, however, later stipulated to the entry of an order that the proceeds would be paid to plaintiff and held in her counsel's IOLTA. The insurer and plan administrator did so. Lawrence later filed a motion on behalf of defendant in the Genesee County Circuit Court to enforce the judgment of annulment and for a declaration that under the terms of the judgment plaintiff waived any rights to the MetLife policy.[1] Defendant asserted that the judgment extinguished plaintiff's right to any life insurance proceeds and Arthur's failure to change the beneficiary designation during his lifetime did not entitle plaintiff to the insurance proceeds nor nullify the judgment's provision that extinguished her interest in the policy. Defendant also requested that the circuit court order removal of the action to the Genesee County Probate Court to consolidate the matter with that court's case and simplify the disposition of the action. Plaintiff opposed defendant's motion essentially denying that she waived the right to the MetLife policy proceeds by consenting to the judgment of annulment. She argued that the judgment required Arthur to change the beneficiary if he desired to not have her as the beneficiary but never did so. She argued that her rights to the proceeds were not extinguished because Arthur failed or neglected to remove her as the beneficiary which resulted in his waiver of his right to do so. Plaintiff contended that the judgment made extinguishment of her right to the policy conditional on Arthur

_____

[1] The register of actions indicates that the matter was first assigned to a circuit judge in the civil division but later reassigned to a circuit judge in the family division.

taking affirmative action to remove her as beneficiary. She also requested that the circuit court retain jurisdiction and not transfer the matter to the probate court because the insurance proceeds were not part of the estate over which that court could act. The circuit court agreed with plaintiff and denied defendant's motion. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo the interpretation and application of statutes. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006); *Webb v Holzheuer*, 259 Mich App 389, 391; 674 NW2d 395 (2003). We also review de novo whether a court has subject-matter jurisdiction. *Bank v Mich Educ Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016).

A consent judgment is akin to a contract, *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008), and this Court reviews de novo a trial court's interpretation of a contract, *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). In *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006), our Supreme Court stated:

> The proper interpretation of a statutory provision is a question of law that this Court reviews de novo. Likewise, contract interpretation is also a question of law reviewed de novo. Waiver is a mixed question of law and fact. The definition of a waiver is a question of law, but whether the facts of a particular case constitute a waiver is a question of fact. A trial court's findings of fact are reviewed for clear error. [Citations omitted.]

## III. ANALYSIS

### A. SUBJECT-MATTER JURISDICTION AND CASE TRANSFER

Defendant argues first that the circuit court abused its discretion by refusing to grant its motion seeking removal and transfer of the matter to the probate court. We disagree.

Subject-matter jurisdiction concerns the right of an adjudicative body to "exercise judicial power over [a] class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending[.]" *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017) (quotation marks and citation omitted). The circuit court is a court of general jurisdiction, MCL 600.151, and has "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art 6, § 13. MCL 600.1021(1)(a) grants to the family division of the circuit court "in cases commenced on or after January 1, 1998" "sole and exclusive jurisdiction over . . . [c]ases of divorce and ancillary matters."

Under MCL 600.841(1)(a), probate courts have jurisdiction and power over the matters conferred on them by the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, under Subpart (c) as conferred upon it under the Revised Judicature Act, MCL 600.101 *et seq.*, and under Subpart (d) as conferred upon it under another law or compact. Circuit courts have concurrent jurisdiction and cannot be deprived of "concurrent jurisdiction as originally exercised over the same matter." MCL 600.845.

MCL 600.846 permits removal of an action or proceeding as follows:

> In an action or proceeding pending in any other court of this state of which the probate court and the other court have concurrent jurisdiction, the judge of the other court, upon motion of a party and after a finding and order on the jurisdictional issue, may by order remove the action or proceeding to the probate court. If the action or proceeding is removed to the probate court, the judge of the other court shall forward to the probate court the original of all papers in the action or proceeding and thereafter proceedings shall not be had before the other court.

Under MCL 700.1302(a)(ii), probate courts have exclusive legal and equitable jurisdiction over matters concerning the settlement of a deceased individual's estate including estate administration, settlement, and distribution, and under Subpart (a)(iii) to declare the rights that involve an estate, devisee, heir, or fiduciary. Under MCL 700.1303(1)(a), probate courts have concurrent legal and equitable jurisdiction to determine matters related to a property right or interest regarding an estate of a decedent, and under Subpart (1)(h) to hear and decide a contract proceeding or action by or against an estate. MCL 700.1303(2), provides:

> If the probate court has concurrent jurisdiction of an action or proceeding that is pending in another court, on the motion of a party to the action or proceeding and after a finding and order on the jurisdictional issue, the other court may order removal of the action or proceeding to the probate court. If the action or proceeding is removed to the probate court, the other court shall forward to the probate court the original of all papers in the action or proceeding. After that transfer, the other court shall not hear the action or proceeding.

MCL 700.1303(3) specifies that the "underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's . . . estate by consolidating the probate and other related actions or proceedings in the probate court."

Matters pertaining to enforcement of a judgment of annulment, however, fall squarely within the sole and exclusive jurisdiction of the family division of the circuit court. MCL 600.1021(1)(a). Accordingly, the circuit court family division had sole and exclusive authority to interpret the judgment of annulment and decide the issue of enforcement of the judgment of annulment in the context of a postjudgment filing in the divorce case. Defendant's motion plainly sought the enforcement of the judgment of annulment. The probate court did not have concurrent jurisdiction over the matter, and therefore, the circuit court did not err by denying defendant's request to remove the matter to the probate court. The circuit court did not err by exercising jurisdiction over the matter to decide the interpretation and enforceability of the judgment entered by the circuit court family division.

## B. PROPER INTERPRETATION OF THE JUDGMENT OF ANNULMENT

Defendant argues that the circuit court incorrectly interpreted the judgment of annulment and erred by denying its motion to enforce the judgment. We agree.

A consent judgment is akin to a contract. *Laffin*, 280 Mich App at 517. A judgment of divorce entered as a settlement between the parties represents a contract. *Holmes v Holmes*, 281

Mich App 575, 587; 760 NW2d 300 (2008). If a judgment is unambiguous, its interpretation is a question of law. *Id*. When interpreting the terms of a divorce judgment, "[i]f the term's meaning is unclear or it is equally susceptible to more than one meaning . . . , interpretation is a question of fact, and the trial court may consider extrinsic evidence to determine the intent of the parties." *Smith v Smith*, 278 Mich App 198, 200; 748 NW2d 258 (2008). "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Id*. A judgment of divorce is to be construed in light of the trial court's findings of fact and conclusions of law. *Beason v Beason*, 435 Mich 791, 798-799 n 3; 460 NW2d 207 (1990). A trial court generally interprets the terms of a divorce judgment in the same manner that it interprets a contract. *Id*.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997). Contract language that is clear and unambiguous must be enforced as written. *Lentz v Lentz*, 271 Mich App 465, 472; 721 NW2d 861 (2006). "A contract is ambiguous if it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Id*. Unless otherwise defined in the contract, contractual terms are given their plain and ordinary definitions. *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006).

As explained in *In re Lett Estate*, 314 Mich App 587, 600; 887 NW2d 807 (2016):

> Thus, a consent judgment of divorce is a contract that must be interpreted according to the plain and ordinary meaning of its terms; a court may not rewrite clear and unambiguous language under the guise of interpretation. A court cannot read words into the plain language of a contract. [Quotation marks, alterations, and citations omitted.]

Under MCL 552.101, a judgment of divorce or annulment must contain provisions that determine the parties' respective rights to the proceeds of any policy or contract of life insurance, endowment, or annuity. At the time of the parties' annulment in 2004, MCL 552.101 provided in relevant part as follows:

> (2) Each judgment of divorce or judgment of separate maintenance shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the husband in which the wife was named or designated as beneficiary, or to which the wife became entitled by assignment or change of beneficiary during the marriage or in anticipation of marriage. If the judgment of divorce or judgment of separate maintenance does not determine the rights of the wife in and to a policy of life insurance, endowment, or annuity, the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates. However, the company issuing the policy shall be discharged of all liability on the policy by payment of its proceeds in accordance with the terms of the policy, unless before the payment the company receives written notice, by or on behalf of the insured or the estate of the insured or 1 of the heirs of the insured, or any other person having an interest in the policy, of a claim under the policy and the divorce.

MCL 552.101(3) mirrored the same requirements in circumstances where the policy "or contract of life insurance, endowment, or annuity upon the life of the wife in which the husband was named or designated as beneficiary . . . ."

In *In re Lett Estate*, respecting interpretation and application of MCL 552.101, this Court clarified:

> The plain language of the first sentence of MCL 552.101(2) requires a trial court granting a judgment of divorce to determine the rights of a wife to the proceeds of any insurance policy on the life of her husband when the wife was named or designated as beneficiary during the marriage or in anticipation of marriage. This sentence does not void the wife's interest in insurance on the life of her husband; it merely requires the trial court to determine all rights of the wife. Thus, MCL 552.101 does not revoke beneficiary designations by operation of law but mandates that a trial court's judgment of divorce contain some language that disposes of the parties' rights to such benefits. [*In re Lett Estate*, 314 Mich App at 597-598 (quotation marks, alterations, and citations omitted).][2]

This Court explained further:

> [Where] the judgment of divorce determined each spouse's interest arising from any beneficiary designation executed before the judgment, . . . the second sentence of MCL 552.101(2), which provides that if the judgment "does not determine the rights of the wife in and to a policy of life insurance . . . the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates," does not apply. The third sentence of MCL 552.101(2), which addresses the potential liability of an insurance company, also does not affect the validity of a postjudgment beneficiary designation. [*Id*. at 598-599.]

In this case, the parties dispute the proper interpretation of the following provision in the judgment of annulment respecting the parties' rights to proceeds of Arthur's life insurance policy:

> IT IS HEREBY ORDERED AND ADJUDGED that unless otherwise stated below any rights of either party as a named beneficiary or by assignment during or in anticipation of marriage in any policy or contract of life insurance, endowment, or annuity insurance on the life of the other are extinguished.
>
> Each party acknowledges that, notwithstanding the language of this clause, they have been advised by their representative counsel that it shall be the responsibility of each party to make the appropriate changes in beneficiary

---

[2] At the time this Court decided *In re Lett Estate*, MCL 552.101 specified the provision respecting the husband's insurance policy in Subpart (2) and mirrored that provision in Subpart (3) respecting the wife's insurance policy. The Legislature amended MCL 552.101 in 2016 effective March 22, 2017, and among other changes renumbered the Subparts. The pre-2016 amendment version applies in this case.

designation of any policies on his/her life to effectuate the intent of this judgment in light of a recent decision in the Federal 6ᵗʰ Circuit Court, <u>Metropolitan Life Ins v. Pressley</u>, no 94-2093, regarding the effect of divorce on beneficiary designation.

The first sentence of the provision plainly specified that the parties' rights as named beneficiaries in any contract of life insurance on the life of the other were extinguished unless otherwise stated below. The second sentence imposed the responsibility upon each party "to make appropriate changes in beneficiary designation of any policies" "to effectuate the intent of this judgment in light of" the United States Sixth Circuit Court's decision in *Metro Life Ins Co v Pressley*, 82 F3d 126 (CA6 1996). The first sentence unambiguously manifests the intent of the parties that their respective interests in the other's life insurance policy be extinguished. The second sentence anticipates a potential issue arising from the *Pressley* decision and requires action, but the sentence does not specify that inaction would nullify the parties' agreement to the extinguishment of beneficiary status set forth in the first sentence.

In *Pressley*, similar to this case, the decedent's estate and his former wife claimed competing interests in the decedent's life insurance benefits from a policy that the decedent obtained as an employee through a company life insurance plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq*. *Pressley*, 82 F3d at 126-128. A judgment of divorce had been entered and the divorce decree specified as required by MCL 552.101, that the parties held insurance policies in their respective possession "free and clear of any claim thereto by the other" and set forth specifically that any rights in any life insurance policy were "extinguished unless specifically preserved by this judgment." *Id*. at 128.[3] The insurer filed an interpleader action in which the decedent's ex-wife moved for summary judgment on the ground that ERISA preempted state law, i.e., MCL 552.101(2), entitling her to the insurance proceeds. The decedent's estate argued that ERISA did not preempt MCL 552.101(2) which required that the judgments of divorce determine the rights of the wife in and to life insurance policy proceeds. *Id*. The lower federal court granted the ex-wife summary judgment and held that ERISA preempted Michigan domestic-relations law and that the designation of the ex-wife as the beneficiary of record controlled and neither the statement of waiver nor MCL 552.101(2) in the divorce decree effected a waiver of her claim to the insurance policy proceeds. *Id*.

The Sixth Circuit analyzed ERISA and considered whether it preempted MCL 552.101(2). It concluded that the decedent's insurance policy was subject to ERISA:

> Inasmuch as section 552.101(2) would determine the distribution of benefits under the Plan if applied in this case, it has a connection with or reference to Alvin's Plan, rendering ERISA preemptive. A state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. [*Id*. at 129 (quotation marks and citations omitted.)

---

[3] The judgment of divorce also stated that the divorce decree did not qualify as a domestic relations order, which would have been expressly exempt from ERISA preemption. *Id*. at 128.

-7-

Although a split in federal circuits existed in the manner of determining ERISA plan insurance policy beneficiaries, the Sixth Circuit stated that, under its precedent established in *McMillan v Parrott*, 913 F2d 310, 311 (CA6 1990), it "takes a different view and holds that ERISA itself supplies the rule of law." *Id*. at 129-130. The court explained that "plan administrators follow plan documents to determine the designated beneficiary." *Id*. at 130. Because the ERISA plan provided for payment of the decedent's insurance proceeds to the beneficiary of record, and the decedent had his ex-wife as the designated beneficiary of record and never altered that designation during his lifetime, the court held that the ex-wife was the proper beneficiary entitled to the proceeds. Accordingly, the court affirmed the lower court's decision. *Id*.

This Court has since considered whether *Pressley* controls Michigan courts' determination of the beneficiary of a divorced decedent's life insurance proceeds. In *MacInnes v MacInnes*, 260 Mich App 280; 677 NW2d 889 (2004), a consent judgment of divorce contained a provision that released all rights of either party to the proceeds of any life insurance policy of the other, but the ex-wife had not changed the designated beneficiary after the divorce and following her death the proceeds were paid to her ex-husband. The lower court held that the former husband had waived his rights as beneficiary to his ex-wife's life insurance policy under the judgment of divorce despite the fact that the decedent's insurance policy had been issued to the decedent in relation to her employment and was administered by the insurer under an employee benefit plan regulated by ERISA. *Id*. at 281-282. This Court considered whether ERISA preempted MCL 552.101(2) and (3), and concluded that the "circumstances of this case convince us that the issue presented is most appropriately resolved under principles of waiver rather than preemption." *Id*. at 286. This Court concluded that *Pressley* represented an untenable minority view and concurred with the majority of federal circuits that had held that ERISA did not preempt waivers of interests by nonparticipatory beneficiaries of ERISA plan insurance policies and that beneficiaries could waive their beneficiary rights. *Id*. at 286-287 (quotation marks and citation omitted).

This Court analyzed the language of the subject divorce judgment which specifically ordered that all rights of either party to the proceeds of any life insurance policy on the life of the other were payable to the estate of the owner of such policy. This Court noted that the ex-husband did not dispute that he knowingly and voluntarily agreed to that divorce judgment provision but argued that the provision conflicted with ERISA and imposed no duty on him to pay over the proceeds to the estate. This Court disagreed and held that "defendant waived his rights to the life insurance proceeds at issue and thus is not entitled to retain them. The above provision is all-inclusive with regard to defendant's relinquishment of his right to life insurance proceeds from policies owned by his former wife[.]" *Id*. at 287-288. Accordingly, this Court affirmed the lower court's order directing the ex-husband to pay the insurance proceeds to the estate of his ex-wife. *Id*. at 290.

Similarly, in *Moore v Moore*, 266 Mich App 96, 97; 700 NW2d 414 (2005), this Court addressed the issue whether the decedent's estate or the decedent's ex-wife was entitled to the proceeds of a life insurance policy and a pension death benefit. In *Moore*, the judgment of divorce specified that any right of either party in any life insurance policy was extinguished unless specifically preserved by the judgment. *Id*. at 99. This Court noted that the decedent had designated the former spouse as the beneficiary of an employment-related life insurance policy but the decedent had not changed the beneficiary designation before death, and the plan administrator paid the proceeds to the named beneficiary. *Id*. at 99-100. The lower court ruled that the ex-wife

"was entitled to the proceeds because she was the named beneficiary and because the waiver language was invalid, as being preempted by ERISA." *Id*. at 100.

This Court concluded that the minority view expressed in *Pressley* did not constitute precedent from a federal court that bound Michigan courts, and acknowledged that in *MacInnes* this Court expressly repudiated *Pressley*'s holding that ERISA did not permit a named beneficiary's waiver of rights in a life insurance policy. *Id*. at 102. This Court explained:

> To determine whether a waiver is valid, our courts have asked if the waiver of ERISA-regulated benefits is explicit, voluntary, and made in good faith. As our Court in *MacInnes* said, . . . [e]ssentially, when we are evaluating whether the waiver is effective in a given case, we are more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any magic language contained in the waiver itself. Michigan courts define "waiver" as the voluntary and intentional relinquishment of a known right. [*Id*. at 103 (alteration added, quotation marks and citations omitted).]

This Court found the ex-wife's argument disingenuous and held that the lower court should have ordered the ex-wife to turn over the proceeds of the decedent's insurance policy and pension death benefits to the decedent's estate. This Court reversed and remanded for entry of judgment in the estate's favor. *Id*. at 103-104.

In *Sweebe*, 474 Mich 151, our Supreme Court affirmed this Court's reversal of the lower court's denial of the decedent estate's motion to enforce the judgment of divorce's waiver provision related to life insurance proceeds. The judgment of divorce specifically ordered that the parties' respective rights in any insurance policy of the other were extinguished. *Id*. at 153. The Court observed that the decedent's employer provided the life insurance policy and the decedent had designated his spouse as the beneficiary but never changed the designation after the divorce. The insurance plan administrator paid the proceeds to the named beneficiary, the decedent's ex-wife, which prompted the estate to move to enforce the waiver in the judgment of divorce. The lower court denied the motion and held that ERISA preempted the waiver. *Id*. On appeal, this Court reversed in a peremptory order holding that the ex-wife "could not retain the life insurance proceeds because she expressly waived any entitlement to the proceeds in the consent divorce judgment." *Id*. at 153-154.

After determining that the plan administrator properly distributed the insurance proceeds to the ex-wife, the named beneficiary, as required under ERISA, our Supreme Court found that the issue in the case solely involved waiver and not ERISA preemption, and whether the ex-wife, "having lawfully renounced her interest in the insurance proceeds in a binding judgment of divorce, may lawfully retain them. This issue is governed exclusively by Michigan law because the proceeds have been properly distributed under ERISA." *Id*. at 155.

> Accordingly, while a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the proceeds are distributed, the

consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds. [*Id*. at 156.]

The Court explained:

> Our decision today holding that a valid waiver is not preempted by ERISA and should be enforced is consistent with numerous past decisions by this Court recognizing that parties have a broad freedom to contract. This Court has long held that waiver is the intentional relinquishment of a known right. It is also well-settled that a waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose.

> Consistent with other courts that have reviewed this issue and with general contract interpretation principles, a court must examine the language of the waiver provision to determine the intent of the parties and if there was a valid waiver of the rights in question. There is no magic language that must be included to effectively waive a person's interest in plan proceeds. Rather, courts that have examined what constitutes a waiver have consistently stated that a waiver must simply be explicit, voluntary, and made in good faith.

> In the context of this case, "explicit" means that the divorce decree is not completely silent on the issue of insurance proceeds. However, there are no specific words that must be included. In determining if a waiver exists, a court must determine if a reasonable person would have understood that she was waiving her beneficiary interest in the life insurance policy at issue. *Id*. at 156-157 (alteration, quotation marks, and citations omitted).

Analyzing the judgment of divorce, our Supreme Court ruled that the decedent and his ex-wife freely reached an agreement regarding the property division and the ex-wife "consented to the waiver of her right to receive proceeds from the decedent's insurance plan." *Id*. at 158. The Court held that "[u]nder Michigan law, plaintiff validly waived the right to retain the proceeds under the binding judgment of divorce." *Id*. The Court explained further:

> Plaintiff and the decedent each freely contracted to waive any interest in insurance proceeds from the other's plans. There is no invasion into the requirements of ERISA because the plan administrator distributed the proceeds to the named beneficiary, as required by ERISA. However, after the plan administrator distributed the proceeds as required by ERISA, a claim could then be filed against the named beneficiary alleging that she waived her right to retain the proceeds. [*Id*. at 158-159.]

Our Supreme Court stated that its decision did not conflict with United States Supreme Court decisions because the case did not involve ERISA preemption of a mandatory state statute that automatically revoked named beneficiaries upon divorce, nor did it conflict with ERISA because the case was simply a contractual waiver dispute between two parties. *Id*. at 158-159. Our Supreme Court affirmed this Court's order and set forth its conclusions as follows:

We conclude that the benefits were properly paid to plaintiff under ERISA, but plaintiff has no legal right to retain the proceeds under the waiver provision in the judgment of divorce. Plaintiff must pay an amount equal to the insurance proceeds to the decedent's estate, which will then distribute the proceeds according to the decedent's will or the laws of intestacy. However, we also note that today's holding does not preclude anyone, including plaintiff, from asserting that there is a will or other valid expression of testamentary intent that the court should recognize, or from asserting a valid claim against the estate in the usual fashion our probate statutes and rules allow.

CONCLUSION

We hold that while a plan administrator is required by ERISA to distribute the proceeds from a plan to a named beneficiary, the named beneficiary can then be found to have waived the right to retain the distributed proceeds. In this case, plaintiff waived her right to the proceeds from the plan when she agreed to the judgment of divorce, which contained a waiver provision. Accordingly, we affirm the Court of Appeals order that requires plaintiff to pay an amount equal to the insurance proceeds to the decedent's estate. [*Id*. at 159-160.]

*Sweebe*, *Moore*, and *MacInnes*, make abundantly clear that *Pressley* is not controlling law in Michigan in cases like the case at bar where a decedent and his ex-wife specifically provided in their consent judgment of annulment for waiver of any rights to the proceeds of any life insurance policies. Under *Sweebe*, *Moore*, and *MacInnes*, *Pressley* could not be applied to this case nor relied upon by plaintiff. ERISA preemption did not apply to negate the consent judgment of annulment's extinguishment of Arthur's and plaintiff's respective rights in any life insurance policies that either of them held.

*Sweebe*, *Moore*, and *MacInnes* clarify that *Pressley* lacked precedential authority, had and has no force or effect in determining the issues presented in this case. In *Sweebe*, our Supreme Court clarified that cases like the case at bar are governed exclusively by Michigan contract law and the issue in the case solely involves whether the ex-wife waived her rights to her former husband's life insurance proceeds. Under *Sweebe*, *Moore,* and *MacInnes*, lower courts must determine if the ex-spouse who is the named beneficiary of a decedent spouse's life insurance policy explicitly, voluntarily, and in good faith waived his or her rights in the insurance policy proceeds.

In this case, analysis of the consent judgment of annulment's life insurance policy provision reveals no ambiguity because it admits of but one interpretation and does not allow two or more reasonable interpretations. The first sentence expressly provides that Arthur and plaintiff explicitly, voluntarily, and in good faith waived their respective rights to any proceeds from any life insurance policy held by the other. The provision complied with MCL 552.101(2) and (3) which mandate that the lower court's judgment of annulment contain some language that disposed of the parties' rights to such benefits. The provision's unambiguous use of the words "are extinguished" is definitive of the parties' agreement to waive any rights to such benefits. The second sentence of the provision does not nullify the waiver and extinguishment of rights, nor does it make the extinguishment of such rights contingent upon other acts. The second sentence

-11-

anticipates a potential issue arising from the *Pressley* decision and requires action, but the sentence does not specify that inaction would nullify the extinguishment of beneficiary status set forth in the first sentence.

The record reveals that the circuit court premised its refusal to enforce the judgment of annulment on *Pressley* and decided that the estate had no right to the insurance proceeds because it concluded that *Pressley* imposed a duty on Arthur to act during his lifetime to change the named beneficiary. The court concluded in essence that, because Arthur did not do so, his failure to act negated plaintiff's express waiver of any rights to the life insurance proceeds. The circuit court erred in this regard.

The record in this case nowhere indicates that plaintiff has ever denied that she expressly voluntarily waived her rights under the consent judgment of annulment to the proceeds of any life insurance policy held by Arthur. Instead, she essentially argues that the insurance policy provision contained a condition precedent to extinguishment. She contends that the judgment ordered Arthur to change his beneficiary designation and his failure to do so negated the judgment's order that the parties' rights as named beneficiaries "are extinguished." She argues that the provision's language stating "unless otherwise stated below" in conjunction with "notwithstanding the language of this clause" made the judgment of annulment's agreed-upon present, definitive waiver and extinguishment of her rights ineffective and unenforceable, unless Arthur changed his policy's beneficiary designation. The provision cannot be interpreted that way.

Contrary to plaintiff's interpretation, the second sentence of the insurance policy provision in the consent judgment of annulment addresses a potential *Pressley* type problem. The parties anticipated that, because Arthur held a life insurance policy as an employment benefit governed by ERISA, to effectuate the parties' intent to extinguish plaintiff's interest in that policy, Arthur had the responsibility to change his named beneficiary. The parties' and the lower court's misconception of Michigan law and the applicability of *Pressley* regarding the effect of divorce/annulment on beneficiary designation, could not nullify the parties' explicit, voluntary, and good-faith waivers of rights to life insurance proceeds. Moreover, the second sentence of the life insurance provision does render the waiver and extinguishment of such rights null and void and resurrect the extinguished beneficiary status. Plaintiff's argument fails in light of the holdings of *Sweebe*, *Moore*, and *MacInnes*.

Applying the holdings in *Sweebe*, *Moore*, and *MacInnes* to the facts of this case, *Pressley* neither applied nor controlled the outcome. Plaintiff's explicit, voluntary, and good-faith waiver set forth in the consent judgment of annulment was not preempted by ERISA nor nullified by Arthur's inaction. The circuit court erred by ruling that *Pressley* controlled the disposition of this case. That error led it to further err by concluding that the second sentence of the judgment imposed an affirmative duty upon Arthur to change his named beneficiary, and because he did not do so during his lifetime, his inaction nullified plaintiff's explicit, voluntary, and good-faith waiver. The circuit court improperly relied on *Pressley* as the ground on which plaintiff could claim entitlement to the proceeds of Arthur's life insurance policy and retention of the proceeds. Under *Sweebe*, *Moore*, and *MacInnes*, the plan administrator could disburse the proceeds to plaintiff, but defendant could seek enforcement of the judgment of annulment and contest plaintiff's retention of the life insurance proceeds. As explained in *Sweebe*, the plan administrator had the obligation to pay benefits to the named beneficiary as required by ERISA, but that did not

mean that plaintiff could not waive her interest in retaining the proceeds nor did it mean that defendant could not enforce her waiver and seek disgorgement of the insurance proceeds. The circuit court should have analyzed the judgment of annulment's life insurance provision and considered whether a reasonable person would have understood that she was waiving her interest in the proceeds. Under *Sweebe*, a valid waiver is not preempted by ERISA and must be enforced. Moreover, *Sweebe* requires that once the proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds.

The circuit court in this case should have considered and applied the holdings of *Sweebe*, *Moore*, and *MacInnes*, and held that, under the consent judgment of annulment, plaintiff explicitly, voluntarily, and in good faith waived her right to the proceeds and retention of them. The circuit court failed to consider plaintiff's express waiver. The court instead focused on the *Pressley* provision in the second sentence. The record also indicates that the circuit court considered dispositive that Arthur had 20 years to make the beneficiary change but did not do so. The circuit court's ruling does not state but implies that Arthur's inaction revoked plaintiff's waiver and extinguishment of rights to the proceeds. Although the second sentence imposed a duty on Arthur to change his named beneficiary, that responsibility cannot be read to provide for revocation of plaintiff's waiver if he failed to do so. Had the parties intended revocation of plaintiff's waiver they certainly could have expressly so provided. They did not.

The circuit court appears to have declined consideration of the fact that plaintiff and Arthur were married for merely a few months and that plaintiff filed to annul the marriage to make it void *ab initio*. The court also disregarded the other terms of the consent judgment of annulment which demonstrated that the parties agreed that they had no claim to any property in the other's possession, waived any rights to interests in pensions and retirement savings which terminated with entry of the judgment, and gave up any claim to any dower rights. "When a court interprets a contract, the entire contract must be read and construed as a whole." *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011) (citation omitted). "All the parts must be harmonized as much as possible, and each word of the contract must be given effect, if possible." *Id*. (citation omitted). "Also, courts may not change or rewrite plain and unambiguous language in a contract under the guise of interpretation because the parties must live by the words of their agreement." *Id*. (quotation marks and citation omitted).

The circuit court erred by relying on *Pressley* and not controlling Michigan law in its interpretation of the judgment of annulment regarding plaintiff's waiver and extinguishment of her rights to Arthur's life insurance proceeds. The circuit court should have applied the holdings in *Sweebe*, *Moore*, and *MacInnes* which repudiated *Pressley* and established that under Michigan law an ex-wife may waive rights to the ex-husband's life insurance policy proceeds and courts must enforce agreed-upon waiver provisions in judgments of annulment that extinguish claims to such proceeds. The circuit court erred by not enforcing the judgment of annulment and refusing to grant defendant's motion.[4]

---

[4] Defendant also argues that MCL 700.2806 to MCL 700.2808 apply to this case and that the circuit court could have ruled in defendant's favor had it considered these statutory provisions.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

Defendant, however, offers nothing further in the way of explanation or argument and no citation to cases or record evidence to support the assertion. An appellant cannot announce a position and leave it to this Court to rationalize the basis for its claims. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Further, because the circuit court did not address or decide the issue, it was not preserved and we need not consider it. Moreover, as explained in this opinion, the holdings in *Sweebe*, *Moore*, and *MacInnes* are dispositive in this case.