*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re E. P. SIEW, Minor.

UNPUBLISHED
April 20, 2023

No. 362074
Macomb Circuit Court
Juvenile Division
LC No. 2020-000114-NA

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals by right the order terminating her parental rights to her minor child, EPS. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case began with respondent's alleged attempt to break into the home of D. Lynch and M. Lynch in April 2020. The Lynches were the parents of M. Lynch II, the father of respondent's other child, AL, and were the adoptive parents of AL after respondent and M. Lynch II's parental rights were terminated. The petition, filed by petitioner Department of Health and Human Services (the "Department"), alleged respondent "attempted to break in and kidnap [AL] while [EPS] was with her. The police were called and when they arrived [respondent] used [EPS] as a shield when the police approached her." Respondent continued to resist arrest, "squeez[ing] [EPS] between her legs causing him distress[,]" and dragging him across the pavement. The police, after restraining respondent, took her to a hospital and petitioned for a mental health evaluation "due to her erratic behavior." EPS was placed with the Lynches as fictive kin, despite the fact M. Lynch II was never confirmed to be EPS's biological father. EPS's legal father was SS, whose parental rights were also terminated in this case.[1] The Lynches were found to be the most "family-like setting" for EPS, because they were the adoptive parents of EPS's sister, AL. Respondent admitted herself to a hospital for suicidal ideations in November 2020, where she stayed for about one week.

---

[1] SS did not appeal the decision to terminate his parental rights to EPS and is not a party to this appeal.

Respondent's participation in parenting-time visits was inconsistent and was excused by respondent for reasons such as transportation issues and her insistence that she did not want to be around people who were vaccinated or wore masks. Respondent completed parenting classes but gained no benefit from them, was uncooperative with caseworkers and therapists, and refused to take her prescribed medications. Respondent also acted inappropriately in front of EPS, such as telling him the Lynches were trying to kill him, the Department was stealing him from her for "blood money," and masks were unsafe and he should not wear one. Respondent was also confrontational with her caseworkers in front of EPS and disparaged the Lynches in front of him. Respondent's parenting time was ultimately suspended after she pulled EPS's pants down in front of the caseworkers during a November 2021 visit, which caused EPS great distress.

The Department ultimately moved to terminate respondent's parental rights, citing respondent's failure to comply with her Parent-Agency Treatment Plan or benefit from court-ordered services, and noted respondent, between October 2020, and October 2021, participated in only 21 of 111 offered visits with EPS. The petition also identified 13 dates on which respondent was asked to participate in a family team meeting but refused to do so.

Ultimately, the trial court found clear and convincing evidence statutory grounds for termination existed for respondent under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to the parent). The trial court also determined it was in EPS's best interests to terminate respondent's parental rights. The trial court opined not only did EPS seem to have no bond with respondent, she also lacked parenting ability, as indicated by her behavior during visits. In addition, EPS's need for permanence and stability weighed in favor of him remaining with the Lynches, who wished to adopt him.

The trial court addressed the possibility of guardianship, stating it was not a workable option because the Lynches were not interested in a guardianship, and the trial court did not feel it could force them to agree. The court also determined that a guardianship was inappropriate because the purpose of a guardianship was to preserve the bond while a parent continues to work to improve, but respondent failed to demonstrate any meaningful improvement in her parenting skills and had no bond with EPS. The court also stated that respondent's contentious relationship with the Lynches would also render a guardianship unworkable.

Thus, the trial court terminated respondent's parental rights to EPS. This appeal followed.

## II. ANALYSIS

Respondent argues on appeal that the trial court erred when terminating her parental rights because it failed to consider a guardianship with the Lynches and otherwise incorrectly concluded that termination was in EPS's best interest. We disagree.

### A. STANDARD OF REVIEW

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews the trial court's determination regarding

best interests for clear error. *Id.* "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id.* at 709-710. "Because MCL 712A.19c(2) grants the trial court discretion in determining whether a guardianship is in the child's best interest, a trial court's decision regarding what factors to consider in making the best-interest determination is reviewed for an abuse of discretion." *In re COH, ERH, JRG, & KBH*, *Minors*, 495 Mich 184, 202; 848 NW2d 107 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id.*

## B. DISCUSSION

First, respondent contends the trial court clearly erred when it determined termination was in EPS's best interest because the court failed to consider a guardianship with EPS's fictive kin, the Lynches. According to respondent, the trial court could award the Lynches custody of EPS until respondent's mental health improved such that EPS could be reunited with respondent. We find respondent's arguments unconvincing.

To terminate a parent's parental rights, the trial court must "find[] by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). All available evidence should be weighed by the trial court, which should consider factors such as " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *In re White*, 303 Mich App at 713, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 114 (2012).

MCL 712A.19c, which applies to juvenile guardianships created only where there has been termination of parental rights, "does not include a preference for creating a guardianship with a relative[.]" *In re COH*, 495 Mich at 199. "The plain language of the statute simply provides that the trial court may appoint a guardian 'if the court determines that [a guardianship] is in the child's best interests[.]' " *Id.* (alterations in original), quoting MCL 712A.19c(2). A guardianship may be an appropriate choice when "an ongoing relationship with [the parent]—rather than termination—is in the [child's] best interests." *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010). "A trial court may use its discretion under MCL 712A.19c(2) to determine the best method for analyzing the child's best interests by considering the circumstances relevant to the particular case." *In re COH*, 495 Mich at 202.

"[B]ecause 'a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a),' the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. "Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests[.]" *Id.* (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

Respondent's argument on appeal conflates the rule for guardianship with the rule regarding placement with a relative. EPS's placement with the Lynches, who were considered fictive kin,[2] was properly considered by the trial court. The trial court noted, despite the alleged familial relationship, the contentious relationship between the Lynches and respondent meant it was "not healthy or beneficial for [EPS] to maintain a relationship with either parent[,]" and it was not in EPS's best interests "to maintain his parents [sic] parental rights regardless of the relationship between the parties." This affirmative finding in the record was sufficient for the trial court's best-interests determination, considering the well-documented problems respondent had with the Lynches throughout the case. By contrast, MCL 712A.19c "does not include a preference for creating a guardianship with a relative[.]" *In re COH*, 495 Mich at 199.

"[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted, alteration in original). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). As previously stated, considerations of the best interests of the child include:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks, footnotes, and citations omitted).]

"The trial court should weigh all the evidence available to determine the child[]'s best interests." *Id.* at 713.

The trial court affirmatively considered alternatives to adoption, the most thorough of which was guardianship. The trial court noted the Lynches were not interested in a guardianship, which, the trial court stated, "would preclude a guardianship in this case." Further, even if the Lynches were willing, respondent was unable to have any workable relationship with the Lynches to facilitate a guardianship. Moreover, EPS had no bond with respondent to protect with a guardianship. Because EPS had no bond to salvage with respondent and, in fact, verbalized on multiple occasions he did not wish to see respondent at all, a guardianship to preserve the bond would not be in EPS's best interests.

Respondent's reliance on *In re Boursaw*, 239 Mich App 161; 607 NW2d 408 (1999), overruled in part by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000), superseded in part by statute on other grounds *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013), lacks merit. In *Boursaw*, 239 Mich App at 176, this Court stated: "While respondent may not yet be a model parent, we believe the record

---

[2] While petitioner contends the Lynches do not qualify as "relatives" under MCL 712A.13a(1)(j), the record is insufficiently developed to conclusively make this determination. Throughout the proceedings, the Lynches' son, M. Lynch II, was identified as EPS's biological father. While the biological relation does not appear to have been established, it is possible the Lynches are related to EPS "within the fifth degree by blood," MCL 712A.13a(1)(j)(i), regardless of the fact SS was EPS's legal father. Regardless, this argument need not be considered, because the weight of placement with a relative is unrelated to a trial court's determination whether a guardianship is in a child's best interests.

shows that, at the time of the termination hearing, she had made significant strides toward remedying the problems that had brought this matter to petitioner's attention." Unlike the respondent in *Boursaw*, however, respondent, by the time of the best interests hearing, made little to no progress over the two-year period of the case, and a continuing relationship with EPS was not in EPS's best interests.

The trial court's considerations of the best-interests factors when it decided to terminate respondent's parental rights supported its decision not to establish a guardianship because, as the trial court noted, not only did EPS have no bond with respondent, but respondent's presence in EPS's life was harmful to him. EPS would revert to his previous behaviors after visits with respondent, including stuttering and having bathroom accidents, which stopped occurring once respondent's parenting time was suspended. Of the few visits with EPS respondent did attend, most did not go well, and respondent consistently behaved inappropriately. Indeed, EPS was still troubled by and working through the trauma of respondent pulling his pants down during the November 2021 visit four months later. Considering the detrimental impact respondent's presence had on EPS throughout this case, the trial court did not clearly err when it determined a guardianship, which would permit respondent to remain in EPS's life and continue to cause him distress, was not in EPS's best interests.

Respondent also makes a cursory argument on appeal that the trial court's best interests analysis was insufficient because the court relied on respondent's mental health issues that, according to respondent, only materialized after EPS was removed. The record does not support this contention. While the complete record of respondent's other termination proceedings is not available, the record in this case demonstrates that respondent's parental rights to AL were terminated as a result of similar concerns regarding her mental health. Respondent was also institutionalized *twice* before EPS came into the court's jurisdiction. Furthermore, even if respondent's mental health concerns only arose because of EPS's removal, such a fact would not render the best-interests determination clearly erroneous. Respondent was unable to properly interact with her attorneys, her caseworkers, or EPS because of her mental health issues and her failure to properly treat them. Respondent's mental health concerns, even if caused by EPS's removal, caused significant emotional damage to EPS. Even excluding the incident where respondent pulled EPS's pants down in front of the caseworkers, the record indicates EPS rarely inquired about respondent after his removal, and would cry and scream when he realized he had to go visit with her. The trial court's finding that respondent's failure to properly address her mental health and concerning behaviors caused EPS distress was not clearly erroneous, and the trial court did not clearly err when it determined that termination would be in EPS's best interest.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood