*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYSA POSTULA-STEIN,

        Plaintiff-Appellant,

v

JASON POSTULA-STEIN,

        Defendant-Appellee.

UNPUBLISHED
September 02, 2025
3:28 PM

No. 369717
Oakland Circuit Court
LC No. 2017-859151-DM

Before: BORRELLO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

In this post-judgment divorce dispute, plaintiff contends the trial court erroneously denied her motion to compel an additional payout from the sale of one of the parties' marital business interests. In her view, the trial court's refusal ran afoul of the unambiguous terms of the divorce judgment, which entitled her to an equal share of the sale's "net" proceeds. We agree and reverse the portion of the trial court's order regarding the additional payout.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties married in 1997 and divorced in 2020. Defendant is a medical doctor and, during the marriage, he and Dr. Nathan Bloch ("Nathan")—his friend and business partner—were the sole shareholders of a medical practice. In 2010, defendant, Nathan, and several other doctors combined their medical practices under an umbrella company, Envision Medical Group, PLLC ("Envision"). In exchange for defendant's and Nathan's membership interests and a capital contribution, Envision acquired their medical practice's assets. Envision also acquired the assets of a medical practice operated by Nathan's brother, Dr. Alan Bloch ("Alan"), but Alan did not become a member.

After Envision's creation, its members continued separately operating their own medical practices, which Envision divided into "pods." Nathan and defendant ran a pod together ("the Pod"), which included theirs and Alan's practices. Though defendant and Nathan had control over certain Pod-level decisions, such as compensation, Envision performed annual reconciliations between itself and each pod and required them to repay any negative balances, such that each pod had a "zero balance" after year end.

Instead of a fixed salary, defendant, Nathan, and Alan received annual "draws" against the Pod's profits, and Nathan and defendant split ancillary Pod revenue in a ninety-ten manner, respectively. Between approximately 2011 and 2021, however, defendant often received a "draw" larger than that to which he was allegedly entitled. Simultaneously, Nathan or Alan took less compensation than they were entitled, or otherwise financially contributed to Envision, to meet capital calls or zero-balance the Pod. Though defendant and Nathan generally knew defendant accumulated "some obligation" to Nathan, Alan, or the Pod over the years as a result, there is no indication they ever formally documented same. Additionally, defendant and Nathan claimed they were unable to determine the exact amount of defendant's financial obligations until 2021, when they received full access to Envision's financial records. Despite this claim, the record indicates they had access to enough information over the years to at least estimate the alleged debt defendant annually accrued.

Plaintiff filed her complaint for divorce in 2017. The parties eventually entered into a partial settlement agreement regarding the division of certain marital business interests, including defendant's membership interest in Envision. An arbitrator later issued an arbitration award that, in relevant part, identified the parties' marital business interests (including Envision) and listed the parties' debts. Notably, the award indicated an unidentified loan from Nathan to defendant "was not memorialized in a legally cognizable manner" and, therefore, not a marital debt.

The trial court entered the divorce judgment in January 2020, which incorporated the terms of the arbitration award by reference. In accordance with the parties' partial settlement agreement, the divorce judgment addressed the disposition and division of marital business interests, including Envision. More specifically, instead of determining the value of these interests, the parties agreed to a "drag-along" provision, under which plaintiff would "immediately" get half of any net proceeds defendant actually received from the sale of a marital business interest. Though the divorce judgment also set forth the parties' debts, it did not mention any financial obligations from defendant to Nathan, Alan, the Pod, or Envision. Indeed, by his own admission, defendant did not disclose any such financial obligations during the divorce proceedings.

Sometime in 2021, Envision began contemplating a sale of its assets. Around the same time, Nathan calculated Pod-specific "reconciliations" between himself, defendant, and Alan, which purportedly resulted in defendant owing an estimated $516,202.44. Both defendant and Nathan believed Alan was ultimately entitled to the amount defendant owed, to compensate him for his contributions to the Pod. Accordingly, Nathan and defendant asked Envision to "reconcile" these amounts before selling its assets, but Envision declined to do so. Thereafter, in November 2021 (i.e., 23 months after the January 2020 judgment of divorce), defendant executed a promissory note in favor of Nathan for a principal amount of $517,000, plus interest.

Envision ultimately sold all of its assets (the "Sale") in accordance with the terms of an asset purchase agreement (the "APA"). Relevant here, the APA provided that Envision would receive the Sale proceeds in two installments, subject to certain withholdings and deductions. Defendant received his first distribution of Sale proceeds (the "First Distribution") in late November or early December 2021. Shortly thereafter, plaintiff filed several motions seeking payment of her share of the First Distribution under the divorce judgment. Over the next few weeks, defendant disclosed his alleged debt to plaintiff for the first time.

Several months later, defendant filed an interpleader complaint in the trial court's business division,[1] alleging Nathan made claims against the First Distribution that could reduce plaintiff's share. Defendant then moved the trial court for a protective order and to hold the First-Distribution-related proceedings pending resolution of the interpleader action. Notably, defendant claimed ignorance as to the actual amount allegedly owed Nathan; challenged the validity of the promissory note; and questioned whether the monthly funds he received from Envision during the relevant period were advance draws against profits or salary (he had apparently understood them to be the latter). Defendant further claimed he had no knowledge of Nathan's claims during the divorce proceedings. The trial court ultimately ruled in plaintiff's favor, noting: "The language in the judgment of divorce is very clear, [plaintiff] gets fifty percent of anything that is paid out." Still, plaintiff had to engage in further litigation before defendant distributed her full share of the First Distribution.

In November 2022, Nathan e-mailed Envision's certified public accountant and chief executive officer, explaining the amounts allegedly owed within the Pod and directing them to reduce "[t]he second and final payment to [defendant]" by the $517,000 owed Nathan under the promissory note, "consistent with the reconciliation of the Pod members." Defendant responded to Nathan's e-mail and affirmed his agreement with "the description of events" and "plan for reconciliation."

Defendant received the second distribution of Sale proceeds (the "Second Distribution") the following month. Notably, all Envision members with an equal membership interest to defendant received the same disbursement amount except him—his share, alone, was subject to a $517,000 transfer from himself to Alan, which defendant claimed reflected amounts defendant owed Envision for his excess compensation. After the Second Distribution, Nathan and defendant purportedly cancelled the promissory note, and the interpleader action was dismissed by stipulation in the trial court's business division. When defendant eventually notified plaintiff of his receipt of the Second Distribution, he calculated her share using the disbursement he received after the $517,000 deduction.

Plaintiff initiated this litigation in July 2023. As pertinent here, she moved to compel payment of an additional portion of the Second Distribution because, in her view, defendant's $517,000 transfer to Alan violated the parties' agreement and divorce judgment. In response, defendant claimed that, before disbursing the Second Distribution, Envision "reallocated" the disputed sum as part of its internal accounting. Unlike with the First Distribution, defendant did not question the validity of the alleged debt or his obligation to repay it, seemingly as the result of additional discovery (including deposition testimony from defendant and Nathan taken after the First Distribution). Instead, defendant claimed plaintiff was not entitled to any portion of the $517,000 because the reduction was proper, and defendant never actually received those funds. The trial court ultimately enforced defendant's distribution to plaintiff. In so doing, the trial court accepted the alleged "reconciliation" as a legitimate and necessary reduction to defendant's Sale proceeds and interpreted "net" proceeds to mean "what you get after other things are paid off," including taxes and debts. Accordingly, the trial court denied plaintiff's motion as to the Second

---

[1] All references to the trial court in this opinion refer to the family division, unless otherwise noted.

Distribution. Plaintiff moved for reconsideration, which the trial court denied. This Court granted leave to appeal. *Postula-Stein v Postula-Stein*, unpublished order of the Court of Appeals, entered September 5, 2024 (Docket No. 369717).

## II. ANALYSIS

Though plaintiff offers various arguments on appeal regarding how and why the trial court erred by excluding the alleged debt from the proceeds of the Sale subject to division between the parties, her ultimate claim is simple: to the extent defendant actually owed the $517,000 at issue, it constituted a debt for which he was solely responsible and should not have been deducted from the Sale proceeds before calculating each party's share. We agree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision interpreting a divorce judgment de novo. *Hudson v Hudson*, 314 Mich App 28, 33; 885 NW2d 652 (2016). Similarly, "[a] divorce judgment entered by agreement of the parties represents a contract," the interpretation of which is a question of law reviewed de novo. *Rose v Rose*, 289 Mich App 45, 49; 795 NW2d 611 (2010). "In general, a trial court's legal determinations are reviewed de novo, any underlying factual findings are reviewed for clear error, and ultimate discretionary decisions are reviewed for an abuse of that discretion." *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021).

### B. INTERPRETATION OF DIVORCE JUDGMENT

The issue before us relates to the trial court's interpretation and application of the divorce judgment as to the division of the Second Distribution. It is undisputed Envision is a marital business interest, and plaintiff is thus entitled to half the proceeds defendant actually received from the Sale. At issue, however, is the proper amount of the Second Distribution (inclusive of taxes)—plaintiff contends it totaled $540,233.72; defendant, $129,624.11. Central is the $517,000 plaintiff believes Envision improperly diverted to Alan, at defendant and Nathan's direction. For his part, defendant instead claims the $517,000 represented a business-related debt arising from necessary Pod reconciliations. Resolution of this dispute turns on what the parties' divorce judgment meant by "net" and "actual receipt" of proceeds.

This Court treats a divorce judgment as a contract and applies principles of contract interpretation. *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017); *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012). "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271-272; 1 NW3d 308 (2022). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id*. at 272 (quotation marks and citation omitted). "Unambiguous contracts must simply be enforced as they are written, absent a handful of extremely unusual circumstances like fraud, duress, or illegality." *Andrusz*, 320 Mich App at 453.

Regarding the division of proceeds from the sale of marital business interests, the divorce judgment provides, in relevant part, as follows:

-4-

5.    Business Interests.  As addressed below, for any Marital Business Interest, the parties shall equally share any payouts ("Payouts") to Defendant that are in the nature of property and that are related to Defendant's ownership (*net after taxes and costs*).

* * *

37.    Business Interests:

a.  Based upon the parties' partial settlement agreement reached on November 7, 2018 in the office of the Arbitrator . . . in which the parties agreed that they would not obtain an expert business evaluation to determine the present value of the business interests.  Rather, they agreed to a "drag-along" by which Plaintiff maintain her marital interest in [defendant's] ownership interests, agreeing that if they had a determination of present value, it would be divided 50-50, requiring payment by Defendant to Plaintiff.  However, due to the difficulty and expense of business valuations, the parties agreed to the "drag-along" concept.  As such, Plaintiff is awarded a 50% marital interest in any *net proceeds* to Defendant as a result of any sale, buy-out, or similar transaction to effectuate the terms and intent herein, *which results in the actual receipt of proceeds by Defendant*, of any business in which Defendant currently holds an interest (the "Marital Business Interests"), whether or not the business entity or the name thereof was clearly identified during the presentation of evidence or listed herein.

* * *

b. Defendant's obligation to pay Plaintiff pursuant to Paragraph 37(a) above, shall be triggered if and when a transaction occurs whereby the Marital Business Interests or any portion of his shares in the Marital Business Interests are purchased or otherwise transferred . . . by or to a third party, *which results in the actual receipt of proceeds by Defendant*.

* * *

f. In the event Defendant's Marital Business Interests . . . are disposed of as defined in Paragraph 37(a) in full or in part, then *Plaintiff's right to immediately receive 50% of all Payouts will cease upon payment in full of her 50% of the net proceeds of said final disposition as defined in Paragraph 37(a)*.  [Emphasis added.]

Of note, the divorce judgment does not expressly define "net," and Section 37 does not provide helpful context regarding the meaning of that word, as used in the judgment.

To give undefined terms meaning, we must read and construe a contract as a whole, *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011), and, under the doctrine of *noscitur a sociis*, give words or phrases meaning within their context or setting, *Bloomfield Estates Improvement Ass'n, Inc v Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007).  And here, the context of the division of proceeds from a marital business interest informs how to interpret Section

5's "net after taxes and costs"—it naturally refers to the amounts remaining after deduction of taxes and costs. This interpretation is consistent with *Black's Law Dictionary* (12th ed.), which defines "net," in relevant part, as "[t]he final amount remaining after all other amounts have been taken away; esp., an amount of money remaining after a sale, minus any deductions for expenses, commissions, and taxes." See *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 213; 926 NW2d 865 (2018) ("In an effort to determine the plain and ordinary meaning of words used in a contract, this Court may refer to dictionary definitions.").

The arbitration award's language buttresses this conclusion. Because the divorce judgment incorporated the terms of the arbitration award by reference, we read the documents together. See *Patel*, 344 Mich App at 280 ("[I]f a contract incorporates another document by reference, the two writings should be read together.") (quotation marks and citation omitted). The arbitration award states, in relevant part:

> [Defendant's] obligation to pay [plaintiff] her marital share of the business will occur if and when his shares or any part of his shares are purchased. By way of example, if [a third party] buys Envision, and [defendant's] payment is *a net of $1 million (after taxes and costs)*, then he would be required to pay [plaintiff] $500,000.

> \* \* \*

> Any payouts to [defendant] that are in the nature of property and are related to his present ownership share will be *divided equally (net after taxes and costs)*.

> \* \* \*

> If [defendant's] current ownership interest is purchased in full, then his obligation to [plaintiff] will cease upon payment in full of her *50% of net*. [Emphasis added.]

As emphasized, the arbitration award too uses the term "net" only in relation to the deduction of taxes and costs. Read together, the divorce judgment and arbitration award thus unambiguously entitle plaintiff to 50 percent of any amount defendant actually received from the Sale, subject only to deductions for taxes and costs.

Defendant says this interpretation writes "net" out of the divorce judgment. He instead affirmatively cites the following language from the trial court's ruling: "Net proceeds means that. It means what you get after other things are paid off. Whether it's taxes. Whether it's debts. . . . [W]hat you get at the end is net proceeds." But, because defendant makes no claim on appeal that the alleged debt could or does constitute a Sale-related tax or cost, this expanded interpretation requires improperly reading the words "debt" and "reconciliation" into the plain language of these documents and, thus, is untenable. See *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013) (explaining that this Court "cannot read words into the plain language of a contract").

Moreover, defendant's interpretation directly conflicts with other provisions in the arbitration award and divorce judgment. Take the arbitration award first. It identifies the parties'

debts but does not mention any debt to Alan, the Pod, or Envision. And to be sure, the award references a loan from Nathan to defendant, but it does not specify the amount or nature of it, and rather provides the debt "was not memorialized in a legally cognizable manner" and classifies the debt as nonmarital.

The divorce judgment likewise lists the parties' debts in detail and provides for the disposition of each, yet it does not reference the alleged debt. It does, however, contain the following relevant language:

> 45. <u>Other Debts</u>. Each party shall be responsible for any other debts in his or her sole name and any and all debts associated with the assets that he or she is assuming and shall indemnify and hold the other party harmless from any liability or claim arising out of or with respect to any obligations, liabilities or claims resulting from these debts. If, however, either party incurred debt in the name of the other party without the other party's consent or knowledge, the party who incurred the debt shall be solely responsible for such debt and shall indemnify and hold the other party harmless from any liability or claim arising out of or with respect to any obligations, liabilities or claims resulting from these debts.
>
> * * *
>
> 55. <u>Full Disclosure</u>. Each of the parties states and affirms that each has disclosed all liabilities and all assets that each owns or has any interest in, whether held by him/her individually, by both of them jointly, or with any other person or entity on his/her behalf or for his/her benefit. The property division provisions set forth in this Judgment are intended to be a distribution and allocation of all the property and liabilities of the parties. If either party has failed, either intentionally or unintentionally, to disclose any of his or her assets, the issue of property division shall be reopened on the motion of either party and the undisclosed asset shall be equally divided if the non-disclosure was unintentional; if it is determined that the nondisclosure was intentional the Court may award a division other than equal.

This language is unambiguous. By his signature to the divorce judgment, defendant assented to a division of assets and liabilities that did not include any alleged debt to Nathan, Alan, the Pod, or Envision. Moreover, he expressly affirmed having disclosed all liabilities in which he had an interest and agreed to exclusive responsibility for "any other debts" in his sole name. As defendant concedes, he did not disclose the alleged debt during the divorce proceedings. Interpreting "net" to include an undisclosed debt in defendant's sole name would thus conflict with—and circumvent—the divorce judgment's other-debts and full-disclosure provisions. Enforcing the unambiguous language of the divorce judgment as it is written, *Andrusz*, 320 Mich App at 453, defendant is solely liable for the disputed amounts.

We find no merit in defendant's claim that the $517,000 constituted a business debt requiring repayment from Sale proceeds. On appeal, defendant contends that the debt arose from "internal accounting reconciliations within [the Pod]" necessary to rectify (1) Alan's initial contributions to Envision; (2) defendant's overpayment simultaneous with Alan's and Nathan's underpayment; and (3) Pod-level reallocations between Alan, Nathan, and defendant necessary to

allow defendant's overcompensation and comply with Envision's annual pod reconciliations. Defendant's position that he owed a debt directly to Envision, as he claims, strains credulity because none of these "internal accounting reconciliations" created a deficit for Envision, in connection with the Sale or otherwise. At most, Nathan—the only other member in the Pod— effectively subsidized defendant's overpayment under the plain terms of the Pod compensation agreement. Unlike the alleged personal financial arrangement between Nathan and defendant which was apparently effectuated on nothing more than a proverbial handshake, Envision's operating agreement requires any loans or advances members make to Envision to "be evidenced by written documentation . . . ." As defendant concedes, the post-judgment promissory note is the only written documentation of the amounts allegedly owed Nathan.[2] Notably, the promissory note requires repayment by defendant, not Envision, indicating the debt did not flow through Envision's APA. What is more, the related $517,000 "reconciliation" payment was not directed to either Nathan or Envision but, rather, to Alan—who was not even a member of Envision or the Pod.

Nor do we find merit in defendant's argument that the $517,000 should naturally be deducted from the Sale proceeds because it constituted an advance against his salary that he used to benefit the marital estate. Such argument is not grounded in any language in the divorce judgment and, regardless, does not help defendant's position—if accepted as true, then the alleged debt was marital in nature and should have been disclosed during the divorce proceedings and incorporated into the divorce judgment. Again, it was not.

Defendant's position on appeal appears more-deeply rooted in his interpretation of "actual receipt" of proceeds, which the divorce judgment leaves undefined. Because the divorce judgment does not offer helpful context as to the meaning of the phrase, and it is not used (in any variation) in the arbitration award, we turn to dictionary definitions. *Lebenbom*, 326 Mich App at 213. Random House defines "actual," in relevant part, as "existing in act or fact; real[.]" *The Random House Dictionary of the English Language: Second Unabridged Edition*, p 21. As noted by our Supreme Court in *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 322; 645 NW2d 34 (2002), Random House defines "receive" as "to take into one's possession," "to have (something) bestowed, conferred, etc.," "to hold, bear, or contain," and "to take, get, accept, or meet with something." *The Random House Dictionary of the English Language: Second Unabridged Edition*, p 1610.[3] Considering these definitions, "actual receipt," as used in the divorce judgment in relation to the division of marital business interests, means proceeds in fact conferred or bestowed upon, or accepted by, defendant.

---

[2] Though defendant attributes the lack of written documentation to Envision, Envision's alleged failure to memorialize the amounts allegedly owed them further undermines defendant's characterization of the purported debt.

[3] Although the *Koontz* Court relied on "Random House Webster's College Dictionary (2000)," *Koontz*, 466 Mich at 322, the relevant definitions are the same. Because the *Koontz* Court analyzed "receive" within a specific statutory context—and, unlike defendant, the plaintiff there could withdraw the disputed funds "at any time and use them as she [saw] fit," *id*. at 322-323—*Koontz* is distinguishable. We nonetheless find the *Koontz* Court's consideration of "receive" helpful in interpreting the divorce judgment's use of the word.

This reading renders unpersuasive defendant's claim that the phrase "actual receipt" of proceeds limits the divisible Sale proceeds to the amount Envision disbursed to him. Envision's disbursement schedule demonstrates it allocated the same amount of Sale proceeds to each member with the same membership interest as defendant, including him. After uncontested and uniform deductions, Envision disbursed $540,233.72 to each such member except defendant, to whom it instead disbursed $129,624.11. Significantly, defendant admitted Envision would have disbursed the larger amount to him but for him directing it to divert $517,000 to Alan. Indeed, Envision memorialized the relevant deduction as a *transfer from defendant*. Under these circumstances, Envision conferred $540,233.72 upon defendant. While it may have *disbursed* a lesser sum to him, he not only *accepted* the entire amount, but expressly redirected a significant portion of his proceeds. Thus, under the terms of the divorce judgment, defendant actually received $540,233.72. This conclusion is buttressed by his obligation to pay taxes on the full allocation, not just the $129,624.11 disbursement. Adopting defendant's contrary view would frustrate the divorce judgment's marital-business-interest provision's purpose, which we cannot do. See *Patel*, 344 Mich App at 271-272 ("This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract.").

For these reasons, the trial court erred in defining "net" to require a deduction of the alleged debt and enforcing defendant's unilateral, $517,000 reduction to the divisible Sale proceeds under the terms of the divorce judgment.

## C. IMPACT OF TRIAL COURT'S ERRONEOUS INTERPRETATION OF DIVORCE JUDGMENT

By excluding the alleged $517,000 "debt" or "reconciliation" from the Second Distribution, the trial court departed from the parties' partial settlement agreement, the terms of which were included in the divorce judgment. The trial court had no authority to do so.

"Property-settlement agreements are, as a general rule, final and cannot be modified." *Smith*, 292 Mich App at 702. "Modifications of property settlements in divorce judgments are disfavored," *Baker v Baker*, 268 Mich App 578, 586; 710 NW2d 555 (2005), and it is well-settled that "courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged," *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012) (quotation marks and citation omitted). Though a trial court may have the authority, in certain circumstances, to modify divorce judgments to reach equitable results, such rule does not apply "in the context of tampering with the parties' consent judgment." *Andrusz*, 320 Mich App at 452-453. "The trial court may, however, fill voids in an incomplete consent judgment, and in so doing must balance the equities insofar as is possible under the circumstances." *Id*. at 453.

Here, the trial court's $517,000 reduction of the Second Distribution effectively constituted a modification of the partial settlement agreement and divorce judgment. Even disregarding that defendant did not move for a modification, the trial court's actions were improper. First, neither party claimed fraud, duress, mutual mistake, or severe stress in relation to the relevant property-division provisions. *Vittiglio*, 297 Mich App at 400. At most, defendant's alleged lack of knowledge as to the amount of the debt constituted a unilateral, not mutual, mistake. Second, the

record reveals no equitable reasons supporting modification. *Andrusz*, 320 Mich App at 452-453. Indeed, though defendant insists plaintiff could have discovered the alleged debt through discovery or a valuation of Envision, he expressly affirmed having disclosed all his liabilities and, unlike plaintiff, had access to the information necessary to discover the amount of his alleged debt—and raise its potential to diminish the value of his interest in Envision—at all relevant times. He chose not to do so.

And third, though our caselaw allows courts to fill in voids in incomplete consent judgments, *Andrusz*, 320 Mich App at 453, that is not the case here. Despite defendant knowing he had outstanding financial obligations connected to his work within the Pod, he took no action to discover the extent of his debt and, by his own admission, did not disclose its existence during the divorce proceedings or even propose language addressing the amounts owed.[4] Instead, he agreed to a division of Envision-related proceeds that did not account for the repayment of the alleged business debt and allowed the parties to reopen the property-division issue only for nondisclosure of assets, *not liabilities*. Defendant's claimed ignorance as to the exact amount of the debt is of no consequence considering his access, at all relevant times, to the information necessary to determine the then-accrued amounts allegedly owed. Under these circumstances, the divorce judgment's failure to account for a Sale-related reconciliation or other repayment of the $517,000 does not render it incomplete.

Similarly, the trial court's $517,000 reduction to the Second Distribution cannot be construed as relief from the divorce judgment in defendant's favor. MCR 2.612(C)(1) allows a court, "[o]n motion and on just terms," to relieve a party from a final judgment on the following relevant grounds:

> (a) Mistake, inadvertence, surprise, or excusable neglect.
>
> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).
>
> * * *
>
> (e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.
>
> (f) Any other reason justifying relief from the operation of the judgment.

Application of MCR 2.612(C)(1)(f) is confined "to extraordinary situations not covered by subrules (a) through (e) and mandate that a court refrain from vacating a judgment if doing so detrimentally affects the rights of the opposing party." *Rose*, 289 Mich App at 59-60. As with modification, defendant did not move for relief from judgment, whether under MCR 2.612 or otherwise. And, regardless, none of the relevant provisions of MCR 2.612(C)(1) apply to this case for the same reasons rendering modification improper (to the extent applicable in this context).

---

[4] As defendant, himself, recognizes on appeal: "Because the governing language in the judgment was included by agreement of the parties, either party could have negotiated for different terms."

Finally, the trial court's enforcement of the $517,000 deduction contradicted the arbitration award. "Domestic-relations arbitration is governed by the specific statutory scheme set forth in the domestic relations arbitration act," MCL 600.5070 *et seq*., under which "parties to a domestic-relations proceeding may stipulate to submit their disputed issues to binding arbitration, including issues of property division . . . ." *Cipriano v Cipriano*, 289 Mich App 361, 367; 808 NW2d 230 (2010). "Because an arbitration agreement narrows a party's legal right to pursue a claim in a particular forum, the judiciary will enforce an arbitration agreement to defeat an otherwise valid claim." *Id*. (citations omitted).

In sum, the parties submitted numerous issues to binding arbitration by stipulation, including the division of property, allocation of debt, and "all other issues related to the domestic relations matter commenced before the court." Recall, the resulting arbitration award, which identifies the parties' debts, does not mention any debt to Alan, the Pod, or Envision; classifies a loan from Nathan to defendant as nonmarital; and indicates the parties' respective shares of marital-business-interest proceeds are subject only to deductions for taxes and costs. The trial court's enforcement of the $517,000 reduction to the Second Distribution contradicted the plain terms of the arbitration award, effectively constituting a modification or vacation of the award; but that can only occur *on the motion of a party*. See MCR 3.602(J)(1)-(2) and (K)(1)-(2). Because neither party made any such motion, the trial court had no authority to modify or vacate the arbitration award's terms.[5]

### III.  JUDICIAL-ESTOPPEL DOCTRINE

Defendant argues the judicial-estoppel doctrine precludes plaintiff's challenge to the trial court's interpretation of the divorce judgment as to the Second Distribution. According to defendant, regarding the First Distribution, plaintiff "prevailed in her argument that the words in the judgment mean exactly what they say, no more and no less." With the Second Distribution, however, she "took the opposite position" and sought to "write the terms 'net' and 'actual receipt of proceeds' out of the divorce judgment."

The equitable doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citation omitted). "For judicial estoppel to apply, a party must have successfully and unequivocally asserted a position in a prior proceeding that is wholly inconsistent with the position now taken." *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012) (quotation marks and citation omitted). Here, defendant has not provided any record support for his claim plaintiff asserted different positions regarding the First Distribution and Second Distribution, and it reflects the opposite. Plaintiff argued below that, under the plain language of the divorce judgment, she was entitled to an immediate disbursement of her portion of the First Distribution "net of taxes and costs." As to the alleged debt, she asserted to the extent such debt existed, it had no bearing on her share of the First Distribution. These arguments are consistent

---

[5] In light of our resolution of this matter, we need not address plaintiff's alternative "setoff" argument.

with those raised concerning the Second Distribution. Accordingly, defendant's judicial-estoppel argument is without any merit.

## IV. CONCLUSION

For these reasons, we reverse the portion of the trial court's order denying plaintiff's request for payment of the remaining portion of the Second Distribution to which she is entitled and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock